DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 306767
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone:  (415) 398-3900

Attorneys for Defendant **Emilio Lara**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  CR-15-00039-GEB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MR. LARA'S MOTION TO COMPEL** |
| v. | ) | **DISCOVERY** |
| | ) | |
| EMILIO LARA, | ) | Date:   June 16, 2017 |
| | ) | Time:  9:00 a.m. |
| Defendant. | ) | |
| | ) | Hon. Garland E. Burrell Jr. |

I.     **INTRODUCTION**

        "In our adversary system for determining guilt or innocence, it is rarely justifiable for the

prosecution to have exclusive access to a storehouse of relevant fact." *Dennis v. United States*, 384

U.S. 855, 873 (1966). With this in mind, the federal legislature has crafted the discovery disclosure

requirements of Federal Rule of Criminal Procedure 16, and the courts have crafted a constitutional

right to exculpatory materials under *Brady v. Maryland*, 373 U.S. 83 (1963). Where the prosecution

fails to comply with the former, Fed R. Crim. Pro. 16(d)(2) sets out the possible remedies:

        *Failure to Comply*. If a party fails to comply with this rule, the court may:

        (A) order that party to permit the discovery or inspection; specify its time, place, and
        manner; and prescribe other just terms and conditions;

1

2

(B) grant a continuance;

(C) prohibit that party from introducing the undisclosed evidence; or

3

4

(D) enter any other order that is just under the circumstances.

5

The Local Rules, which also command compliance with Rule 16 be completed within 14

6

days of arraignment, additionally subjects parties to sanctions for noncompliance. *See* L.R. 440. The

7

remedy for an intentional *Brady* violation is dismissal of the indictment. *See United States v. Cooper*,

8

983 F.2d 928, 931 (9th Cir. 1993); *Brown v. Borg*, 951 F.2d 1011 (9th Cir. 1991); *United States v.*

9

*Chen*, 605 F.2d 433, 435 (9th Cir. 1979).

10

11

Mr. Lara moves to compel materials he had requested from the government and been denied,

12

materials related to the IRS' investigation of his tax return preparation business, including an

13

unknown number of interviews of Mr. Lara's clients which did not give rise to criminal charges.

14

These materials are exculpatory *Brady* materials, constituting evidence of a pattern of lawful conduct

15

and representing the thousands of tax return preparation transactions in which Mr. Lara aided in

16

preparing returns devoid of any misrepresentations. These materials are also essential to the

17

preparation of Mr. Lara's defense under Fed. R. Crim. Pro. 16(a)(1)(E)(I), and should be disclosed

18

pursuant to that statutory provision. Mr. Lara seeks an order from this court commanding the

19

government to produce the materials he has requested, necessary as they are to the preparation of his

20

21

defense.[1]

22

23

---

24

[1] On February 10, 2017, the Court originally set a briefing schedule for all Rule 12 motions, making them due on April 21, 2017, with oppositions to follow on May 12, 2017. Mr. Lara's counsel endeavored and intended to file the present motion on Friday, April 21, 2017, in accordance with the court's order. However, a long-lasting, city-wide power outage in San Francisco, the site of counsel's office, prevented counsel from accessing its electronic server where the draft of this motion was stored and from completing its filing on the scheduled date. Counsel thus presently files this motion to compel discovery on the next court day, Monday, April 24, 2017. Counsel attempted to contact counsel for the government, AUSA Jeremy Kelley, on April 21 regarding this matter, but was informed by automated message that Mr. Kelley is out of the office for a scheduled trip.

25

26

27

28

## II.   STATEMENT OF FACTS

On February 19, 2015, the government indicted Emilio Lara for 38 counts of aiding and assisting in the preparation and presentation of false and fraudulent income tax returns, in violation of 26 U.S.C. § 7206(2). According to the government, at least between the years of 2008 and 2011, Mr. Lara operated an income tax return preparation business, wherein he aided clients in preparing their income tax returns. During that time, in addition to the tax returns he accurately prepared on behalf of his customers, Mr. Lara also assisted in preparing 38 returns for 21 different customers in which inaccurate information was given regarding a variety of expenses and deductions. It is the government's theory that Mr. Lara purposefully and willfully aided in the submission of these error-laden returns.

Having noted inaccuracies in income tax returns submitted by clients of Mr. Lara, the Internal Revenue Service initiated a financial investigation into Mr. Lara and his customers. Over the course of this investigation, the IRS interviewed an unknown number of Mr. Lara's clients, ultimately identifying a number of whom whose accounts purportedly did not support the information recorded on their returns.

Following Mr. Lara's indictment and throughout the proceedings in this case, Mr. Lara's counsel repeatedly met and conferred with AUSA Jeremy Kelley regarding his requests for Rule 16 discovery. Specifically, counsel discussed a request for all materials related to the IRS' lengthy investigation of Mr. Lara, including all interviews of individual clients of Mr. Lara. The prosecutor refused compliance, not denying that such interviews took place, but asserting that he does not believe the materials are reasonably calculated to lead to admissible evidence, and so is unwilling to render production. To date, the government has not disclosed any interviews of Mr. Lara's clients, other than those of individuals expressly named in the indictment.

III.   **MR. LARA SEEKS ALL DISCOVERY RELATED TO THE INTERNAL REVENUE SERVICE'S INVESTIGATION OF THE TAX RETURNS HE ASSISTED IN FILING, INCLUDING ALL HERETOFORE UNDISCLOSED INTERVIEWS OF ANY OF THE 5,975 INDIVIDUALS MR. LARA ASSISTED IN PREPARING RETURNS BETWEEN THE YEARS OF 2008 AND 2011.**

The evidence Mr. Lara seeks to have this court compel the disclosure of is materials and records related to the Internal Revenue Service's lengthy investigation of Mr. Lara. Over the course of this investigation, IRS agents reviewed thousands of pages of returns and interviewed numerous witnesses, many if not all of whom were clients of Mr. Lara's company. From this investigation arose criminal charges under 26 U.S.C. § 7206(2) for Mr. Lara's assistance in preparing allegedly fraudulent returns for 21 different clients between the years of 2008 and 2011. What the indictment does not mention are the thousands of other clients Mr. Lara assisted in filing tax returns during that same time period, clients whose returns were lawfully filed and contained no false information. These clients, whom Mr. Lara charged less than $200 for an individual return, have alleged no impropriety, and the thousands of returns Mr. Lara assisted them in preparing and filing contain no known misrepresentations.

The offense for which the government has charged Mr. Lara, willfully aiding in the preparation of fraudulent returns, requires as an element the offender's knowledge of his false misrepresentations, and a "bad purpose or evil motive." *United States v. Bishop*, 412 U.S. 346, 361 (1973). Yet it is unclear with what evil motive the government theorizes Mr. Lara would have acted in intentionally and fraudulently increasing deductions on the returns of only a small percentage of his customers, generating what was likely only minor tax savings for those clients and doing nothing to increase his personal business revenue. In defending himself against the prosecution's case, it will be incumbent on Mr. Lara to give the fact-finder a full and complete picture of his tax return preparation business, showing the nonsensical nature of the conduct which he is alleged to have

intentionally engaged in. The preparation of fraudulent returns for 21 customers, in a vacuum, may seem a logically reasonable, if unwise and unlawful, criminal enterprise. When considered alongside thousands of properly filed returns over years of business, the conduct which the government alleges Mr. Lara committed seems far less likely to have been intentional, and instead suggests unintentional mistakes on only a very small percentage of the returns which Mr. Lara assisted in preparing. Indeed, the pattern of misrepresentations and excessiveness of service fees charged for those clients who benefitted from the excessive (and fraudulently obtained) returns can be important evidence of willfulness in the context of § 7206(2). *United States v. Conlin*, 551 F.2d 534, 536 (2d Cir. 1977). Naturally, so too can a pattern of lawful assistance and standardized service fees support the inference, and defense, of a lack of willfulness in those returns that diverge from the thousands of properly assisted clients'.

    In investigating Mr. Lara's case, IRS agents interviewed many of his clients in order to verify the representations Mr. Lara made on their returns. Of these customers, only 21 gave rise to the allegations in the indictment. The remaining customers did not provide information that supported criminal charges, and the interviews of those clients thus comprise valuable evidence showing an ongoing pattern of lawful activity on Mr. Lara's behalf.

    Discovery provided to the defense by the government in the form of images of flash drives seized from Mr. Lara indicates that, between the years 2008 and 2010, Mr. Lara assisted in the preparation of at least approximately 9,064 returns. Additional materials obtained by the defense indicate Mr. Lara assisted in preparing at least 109 additional returns in the year 2011. Together, these records indicate that Mr. Lara assisted in the preparation of at least approximately 9,173 returns in the years 2008 through 2011, and in so doing assisted at least approximately 5,975 different individual clients in that time frame.

It is currently unknown to the defense exactly how many of those 5,975 clients the IRS investigated and interviewed. But it is clear that more than 21 customers were contacted by IRS agents and questioned about their business with Mr. Lara. The government has not denied this is the case, nor that many additional, undisclosed interviews were conducted over the course of the IRS' investigation. In response to Mr. Lara's requests for discovery on these additional clients, the government merely claims it is not required to turn over those interviews, nor any other materials related to the investigation, asserting that only the interviews of the 21 clients whose returns gave rise to criminal indictments are necessary for disclosure. For this reason, Mr. Lara presently seeks an order from this court compelling the government to disclose all interviews in its possession of other clients of Mr. Lara's tax preparation business, as well as any other materials related to the IRS' civil and criminal investigation of Mr. Lara.

## IV.  THE REQUESTED DISCOVERY CONSTITUTES *BRADY* MATERIALS AND THEREFORE MUST BE DISCLOSED.

The materials sought by Mr. Lara, related to the IRS' investigation of the thousands of clients whose returns he properly and lawfully assisted in the filing of, constitute exculpatory materials supportive of his defense and that rebut an element of the crime for which Mr. Lara has been charged, that is, the "bad purpose or evil motive" he is required to have acted with. Therefore the materials Mr. Lara has requested should be disclosed pursuant to the requirements of *Brady* and the United States Constitution.

Premised on the due process guarantees of the Fifth and Fourteenth Amendments, *Brady* requires the disclosure of material exculpatory evidence independent of the good or bad faith of the prosecutor (*Brady*, 373 U.S. at 87) or the lack of diligence on the part of defense counsel in ferreting out the evidence (*United States v. Alderdyce*, 787 F.2d 1365 (9th Cir. 1986). *Brady* extends to all

materials in the government's files, including files of federal and investigative agencies associated

with the prosecution. *Kyles v. Whitley*, 514 U.S. 419, 454 (1995); *Briggs v. Raines*, 652 F.2d 862,

865 (9th Cir. 1981). The prosecution is also legally responsible for knowing, and disclosing where

necessary, information uncovered in the government's parallel civil investigations. *United States v.*

*Reyes*, 577 F.3d 1069, 1078 (9th Cir. 2009); *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995).

The standard for materiality under *Brady* is the "reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different." *United States v.*

*Bagley*, 473 U.S. 667 (1985). As the Supreme Court has clarified, this requires a "cumulative

evaluation":

> [A] showing of materiality does not require demonstration by a preponderance that
> disclosure of the suppressed evidence would have resulted ultimately in the
> defendant's acquittal. . . . *Bagley*'s touchstone of materiality is a "reasonable
> probability" of a different result, and the adjective is important. The question is not
> whether the defendant would more likely than not have received a different verdict
> with the evidence, but whether in its absence he received a fair trial, understood as
> a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In deciding what evidence is exculpatory, only an

advocate, and not the prosecutor, can properly and effectively make such a determination. *Dennis*

*v. United States*, 384 U.S. 855, 875 (1966). And although the practical truth of a federal prosecution

is that the exculpatory value of evidence in the prosecution's possession is, at least initially,

determined by the prosecutor, the government cannot delegate such a determination to non-attorneys

working on its behalf. *See United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996) ["[d]elegating

the responsibility to a non-attorney police investigator to review his own notes [for *Brady*

information] is clearly problematic"].

Even inadmissible evidence qualifies as Brady material where it could lead to the discovery

of admissible exculpatory evidence. *United States v. Olsen*, 704 F.3d 1172, 1184 (9th Cir. 2013);

*United States v. Price*, 566 F.3d 900, 911-912 (9th Cir. 2009);  *Paradis v. Arave*, 240 F.3d 1169, 1178-1179 (9th Cir. 2001). Specifically, courts have affirmed *Brady* obligations to disclose witness statements favorable to the defendant (*See Jackson v. Wainwright*, 390 F.2d 288, 295 (5th Cir. 1968); *Clemmons v. Delo*, 124 F.3d 944, 952 (8th Cir. 1997)) as well as the existence of witnesses favorable to the defense *(See U.S. ex rel. Meers v. Wilkins*, 326 F.2d 135, 138 (2d. Cir. 1964)). The government also has a Brady obligation to turn over materials unrelated to the instant offense that support alternative explanations for the crime. *See*, *e.g.*, *United States v. Jernigan*, 492 F.3d 1050, 1057 (9th Cir. 2007).

Mr. Lara has requested materials related to the IRS' investigation of his tax return preparation business, including records of their inquiries into and interviews of numerous clients whom Mr. Lara lawfully assisted in preparing accurate returns. These materials are themselves exculpatory, consisting of witness statements favorable to Mr. Lara and records indicating the existence of witnesses who have given favorable statements. Mr. Lara's lawful conduct in assisting thousands of clients in preparing thousands of accurate returns supports the defense theory that he never intended to make any fraudulent representations in the returns he aided in preparing, and that the existence of the alleged inaccuracies can be entirely explained by neglect and Mr. Lara's business practice of preparing a massive number of returns for non-English-speaking clients with a quick turnover at low prices. The statements of clients supporting this defense theory, that is, indicating that Mr. Lara dutifully assisted them in preparing accurate returns and did so with expeditiousness at an affordable rate, are exculpatory because they support an explanation of the offense that is not the government's and, indeed, does not constitute the commission of an offense at all.

The materials Mr. Lara seeks relate to similar transactions in which he engaged and support an alternative explanation for the conduct the government alleges was unlawfully committed. These

materials serve to negate an element of the charged offense, that of wilfulness, suggesting that Mr. Lara did not act with a bad purpose or an evil motive. Even in the event that the records, upon disclosure, do not constitute admissible exculpatory evidence, they will surely lead to that evidence, providing to Mr. Lara a starting point for further investigation in order to obtain his own evidence of lawful conduct from the witnesses interviewed by the IRS.

The government has a constitutional obligation to turn over the materials Mr. Lara has requested. Its failure to do so should be remedied by an order of this court compelling it to disclose all materials related to the IRS' lengthy investigation of Mr. Lara, including all recordings of all interviews of clients of Mr. Lara (or interview notes, in the absence of an audio recording). These materials are exculpatory, and will facilitate Mr. Lara's defense. Production thereof is necessary.

## V.   THE REQUESTED DISCOVERY MUST BE DISCLOSED BECAUSE IT IS MATERIAL TO MR. LARA'S DEFENSE.

Regardless of whether the evidence Mr. Lara seeks qualifies as *Brady* material, it is worthy of disclosure under the Federal Rules of Criminal Procedure. Expanding on the constitutional principles underlying *Brady*, Fed. R. Crim. Pro. 16(a)(1)(E)(i) provides a statutory requirement for the disclosure of documents "material to preparing the [defendant's] defense." The Ninth Circuit has termed this form of materiality a "low threshold," explaining that "[i]nformation is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). Under this provision, materials unrelated to the specific offenses with which a defendant had been charged should be disclosed where they may support an alternative defense theory that would explain the government's incriminating evidence.[2] *See United States v. Stever*, 603 F.3d 747, 753 (9th Cir. 2010) [holding that

---

[2]  The Court should not read the materiality requirement to eliminate the need for disclosure simply because the very lack of disclosure prevents the defense from describing the materials sought with a great deal of

Rule 16 required disclosure of law enforcement reports bearing on drug trafficking organizations as material to preparation of defense because they might have supported a defense that the organizations were responsible for the marijuana growing operation on defendant's property].

The materials Mr. Lara seeks for disclosure here support an alternative explanation for the conduct the government alleges to be unlawful, and should be produced to him as "material to preparing his defense." These materials, including the IRS interviews of clients whom Mr. Lara dutifully assisted in preparing accurate tax returns, further Mr. Lara's defense by evidencing a lack of willfulness in the errors that are alleged to have been made on a small percentage of the returns Mr. Lara prepared. The interviews indicate the clients whom the IRS has already established were lawfully assisted, and are important evidence for painting a crucial context of the conduct the government claims Mr. Lara committed.

Criminal defendants in federal court have a right to establish that they are a law abiding citizen as a means of refuting the charges against them. *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981); *see also Michelson v. United States*, 335 U.S. 469 (1948); Fed. R. Evid. 404. So too must a defendant be permitted to present evidence of his honesty or integrity, regardless of whether he testifies in his own defense, as such evidence "may be enough to raise reasonable doubt of the guilt of the accused." *United States v. Darland*, 626 F.2d 1235, 1238 (5th Cir. 1980). And where character may create a reasonable doubt as to a defendant's guilt, the treatment of character as a non-issue is tantamount to impairing his ability to present a defense. *United States v. John*, 309 F.3d 298, 305 (5th Cir. 2002). While the Federal Rules of Evidence create technical procedures for the ways in which character evidence can be adduced, including limiting the admission at trial of specific

---

particularity. *See* Fed. R. Crim. P. 16 advisory committee's note to 1974 amendments ("It may be difficult for a defendant to make this showing [of materiality] if he does not know what the evidence is.")

instances of conduct, the principles underlying the importance of a defendant's ability to evidence his law abiding nature should permit Mr. Lara to discover materials that show his conduct and business practices as an honest tax preparer. The materials Mr. Lara seeks will undoubtedly aid in his presentation of a defense of his being an honest, law-abiding tax return preparer. They will evidence the fact that he is a law-abiding citizen who has prepared thousands of accurate returns and dutifully assisted thousands of satisfied clients. Evidence of his customers' interactions with him, and his assisting them in accurately preparing returns, confirm that Mr. Lara ran a routine business practice for his local community supported by fast, simple, and efficient income tax return assistance. These interviews will also show the means by which Mr. Lara would render his assistance, including the ways in which he would bridge language gaps for non-English-speaking clients.

At trial, Mr. Lara will later be tasked with supporting the admission of such evidence under Fed. R. Evid. 404(b), showing that "1) it tends to prove a material fact; 2) the prior act is not too remote in time; 3) the evidence is sufficient to support a finding that the defendant committed the act; and 4) where knowledge and intent are at issue, the act is similar to that charged." *United States v. Tsinnijinnie*, 91 F.3d 1285, 1288-89 (9th Cir. 1996). Mr. Lara's pattern of lawful conduct in preparing thousands of accurate returns in like circumstances for similarly situated clients has an undeniable tendency to show he acted with an intent to aid his customers, and that the small percentage of instances in which he presented allegedly inaccurate information are likely the result of inadvertence and the very nature of his business, rather than a wilful intent to defraud the government. These acts regarding which Mr. Lara seeks discovery from the prosecution are not only in close temporal proximity to the alleged fraudulent returns, some likely occurring on the very same days, but occurred in situations nearly identical to the ones in which the 38 returns in the indictment are alleged to have occurred. Materials related to those lawfully filed returns will show just how

similar those circumstances were, and will present a reasonable doubt that Mr. Lara arbitrarily selected a proportionally small number of returns to qualify for fraudulent aid.

The materials requested by Mr. Lara do more than even that. These records, including the interviews sought, show Mr. Lara's long-term pattern of lawful conduct, going directly to his defense that the false returns alleged by the government are nothing more than inadvertent aberrations, diversions from the norm that can only reasonably be blamed on simple neglect, and not purposeful fraud. Crucially, these materials also allow Mr. Lara to develop his defense through investigation and trial preparation, providing him the tools he needs to "prepare his defense" in the form of statements by clients. The importance of the materials whose production Mr. Lara requests cannot be ignored, and this Court should order their disclosure accordingly.

## VI.    CONCLUSION

In light of the arguments herein, Mr. Lara requests this Court order the government be compelled to disclose all materials related to the IRS' civil and criminal investigations of Mr. Lara, including specifically all interviews conducted with clients of Mr. Lara's tax return preparation business, recorded or otherwise, in whatever form they may exist.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

Dated: April 24, 2017                    By: /s/ David J. Cohen
                                         DAVID J. COHEN, ESQ.

Attorneys for Defendant **Emilio Lara**