PHILLIP A. TALBERT
United States Attorney
JEREMY J. KELLEY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:15-CR-00039-GEB |
|---|---|
| Plaintiff, | UNITED STATES' OPPOSITION TO MOTION TO COMPEL DISCOVERY |
| v. | DATE: June 8, 2017 |
| EMILIO LARA, | TIME: 2:00 p.m. |
| Defendant. | COURT: Hon. Edmund F. Brennan |

Defendant Emilio Lara requests the Court to compel the government to produce all interview reports in its possession with clients of Lara's tax preparation business as well as any other, unidentified materials related to the government's investigation of Lara.  ECF No. 42.  This motion is premised upon *Brady v. Maryland*, 373 U.S. 83 (1963), as well as Federal Rule of Criminal Procedure 16.  Specifically, Lara contends evidence that he may have prepared certain non-fraudulent tax returns is probative of whether Lara willfully filed the false tax returns charged in the Indictment.  As such, he argues, this information is exculpatory and material to the preparation of his defense.

### I.      BACKGROUND

In 1996, Lara completed a four-month class at H&R Block, receiving a perfect score on his examination and a license to prepare tax returns.  Lara later opened Lara's Income Tax Services and offered income tax preparation services to the public in Vallejo, California.

In 2010, the Internal Revenue Service (IRS) Scheme Development Center (SDC) identified a pattern of characteristics in returns filed by Lara which indicated falsely inflated refund requests.  In

particular of the 5,312 tax returns filed by Lara in 2009 and 2010, ninety-five percent resulted in a tax refund and many included questionable Schedule A deductions. The SDC randomly selected sixty returns for further analysis. Of the sixty returns, all included Schedule A forms claiming large deduction amounts, such as medical and dental expenses. Fifty-nine of the sixty returns reported deductions exceeding forty percent of the taxpayer's adjusted gross income, which is highly suspicious.

To investigate this pattern of false returns, an undercover special agent from the IRS entered Lara's Income Tax Services in March 2011 to request that a 2010 tax return be prepared for him. The agent provided a W-2 and a Form 1098 to Lara. Lara entered the information into his computer and asked the agent whether the agent had any expenses. The agent informed Lara that he did not have any medical expenses, but did pay a car registration fee of $85, donated a small amount to his church, and paid tolls on his commute to work. The agent also told Lara he had no job-related expenses, and that his employer's equipment was used to perform all duties.

Lara then prepared a tax return for the agent, which included the following false items: $3,879 in charitable contributions, $500 in contributions made other than by cash or check, $5,414 in unreimbursed employee expenses, and tax preparation fees of $200 for the previous year's return. The undercover agent did not provide any of these amounts to Lara. Lara never reviewed these amounts with the undercover agent prior to finalizing the return. The return Lara prepared using these falsified amounts showed a tax refund of $862 while a correct return would have shown $1,214 in tax due.

A subsequent search of Lara's business revealed that the manner in which Lara had inflated deductions on the agent's return was also used by Lara to inflate deductions on the returns of other clients. In particular, Lara falsely inflated medical and dental expenses, charitable contributions, and unreimbursed employee expenses on Schedule A forms to maximize his clients' tax refunds.

IRS agents then interviewed twenty-four individuals identified from amongst the sixty returns reviewed by the SDC. Every person interviewed identified false information on their returns.[1] The government ultimately charged Lara with thirty-eight counts of aiding in the preparation of a false return based upon returns for twenty-one of the twenty-four individuals interviewed. In its initial production of

---

[1] One individual dealt with Lara's brother, not Lara, but still identified false information on the return.

discovery, and as early *Jencks* material, the government provided the defense with memoranda of twenty-three of these interviews, excluding only a single interview in which the taxpayer dealt with Lara's brother, not Lara. As a curtesy to counsel, that final interview report has now been produced as well.[2]

## II.   ARGUMENT

Lara seeks all documents in the government's possession which would indicate there may exist returns which were lawfully filed. His motion is premised upon the government's *Brady* obligation to produce exculpatory evidence as well as the right for a criminal defendant under Federal Rule of Criminal Procedure 16 to seek any documentary evidence that would be material to preparing his defense. The Court should deny Lara's request.

### A.   Lara seeks items that do not exist

First, and foremost, the Court should deny the request because there are no undisclosed documents in the government's possession of the type that Lara seeks. The government has disclosed all witness interviews conducted by the IRS investigating agents, including the recent curtesy disclosure of an interview in which Lara is not mentioned. The government is also not in possession of any tax return information or other documentation of Lara's business which Lara himself does not possess. In August 2016, the government produced to the defense copies of all hard drives seized from Lara's business during the execution of a federal search warrant. Any additional documents that Lara may think are relevant to his defense—such as possible non-fraudulent returns—would be located on these hard drives, which are already in his possession. While Lara requests from the government "materials that show his conduct and business practices as an honest tax preparer," ECF No. 42 at 11, all evidence of Lara's business practice is in Lara's own possession or is information of which Lara, as the operator of the business, would have personal knowledge. The United States is not obligated under *Brady* to furnish a defendant with information which he already has in his possession or already knows. *See*

---

[2] Contrary to the contention of Lara's counsel, the government never refused to produce any additional interviews. Government counsel did not know if other interviews existed and merely told Lara's counsel he would have to inquire of the agent whether there were other interviews. After discussing the matter with the agent, it was determined the only memoranda of interview not previously produced was the interview involving Lara's brother.

1  *United States v. Taylor*, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).

2  Moreover, although Lara suggests that the United States somehow scoured his business records to find the only thirty-eight returns that contained materially false representations that is false.  As discussed above, the thirty-eight charges derived from interviews with twenty-four of Lara's clients identified from amongst sixty randomly selected returns the SDC reviewed.  The SDC's analysis of these sixty random returns indicates that each one of them showed indicia of fraud.  The chances that the SDC randomly selected the only fraudulent returns Lara prepared is absurdly low.  Contrary to Lara's contention, this suggests the vast majority of Lara's returns contain false representations.  The United States does not have in its custody any documentation or other evidence about nonfraudulent returns filed by Lara.  Rather, every return the government examined and every client the government interviewed[3] inculpates Lara in preparing returns using materially false information.  Of course, the government continues to investigate Lara's conduct in preparing this matter for trial, and will produce any additional material that comes into the government's possession and is subject to disclosure.

**B.     Even is such items existed, they would not be subject to disclosure under Rule 16**

Second, any reports, memoranda, or other internal government documents that Lara seeks are not subject to disclosure under Rule 16.  Documents may be subject to disclosure under Rule 16 if they are material to preparing the defense.  Fed. R. Crim. P. 16 (a)(1)(E)(i).  Rule 16, however, excludes from this discovery right any reports, memoranda, or other internal government documents.  Fed. R. Crim. P. 16(a)(2).  To the extent Lara seeks reports, memoranda, or other internal government documents pursuant to Rule 16, his request should be denied as such material is not subject to disclosure.[4]  *See also United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007).

**C.     Even if such items existed, they would not be *Brady* material**

Finally, Lara argues further that the information sought is subject to disclosure under *Brady*. Information is subject to disclosure under *Brady* when it is material either to guilt or punishment. 373 U.S. at 87.  Evidence is material "only if there is a reasonable probability that, had the evidence been

---

[3] Aside from the single interview in which Lara was not mentioned.

[4] In this case, the government has provided early *Jencks* disclosures of memoranda of interview as a curtesy to counsel and to facilitate the resolution of this case.  Disclosure of these reports was not required until after the witnesses had testified.  Fed. R. Crim. P. 26.2; 18 U.S.C. § 3500.

disclosed to the defense, the result of the proceeding would have been different." *United States v. Kohring*, 637 U.S. 895, 902 (9th Cir. 2011).  The items sought are not relevant or admissible at trial, provide no use as impeachment material, and will not lead to other exculpatory evidence, and they are therefore not exculpatory nor subject to disclosure under *Brady*.  *Cf. id.* at 912.

Lara requests evidence in the government's possession that he may have prepared non-fraudulent returns in addition to fraudulent returns.  That Lara may have prepared nonfraudulent returns is not relevant to the determination of whether Lara prepared the fraudulent returns charged in the Indictment.  Such evidence is "properly excluded as immaterial[.]  A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions."  *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955), *adhered to on reh'g*, 235 F.2d 664 (9th Cir. 1956); *see also, e.g.*, *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) ("The fact that Ellisor purportedly produced other shows does not bear on his intent to defraud with respect to the Christmas show, and is therefore irrelevant."); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions."); *United States v. Winograd*, 656 F.2d 279, 284 (7th Cir. 1981) ("The district judge correctly refused to admit the evidence on this basis because evidence that Siegel engaged in certain legal trades is generally irrelevant to the issue of whether he knew of other illegal trades."); *United States v. Null*, 415 F.2d 1178, 1181 (4th Cir. 1969) ("The contention that evidence of innocence on one occasion has probative value in establishing lack of guilt in an entirely different connection has been rejected in the usual case, by the courts.").  This type of evidence is also not admissible under either Rule 404 or 405.  *See United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) ("[W]hile a defendant may show a character for lawfulness through opinion or reputation testimony . . . evidence of specific acts is generally inadmissible." (citation omitted)); *see also Ellisor*, 522 F.3d at 1270–71 ("These specific acts of good character were inadmissible under Rules 404(b) and 405(b)22 to prove Ellisor's action in conformity therewith."); *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) ("Evidence of good conduct is not admissible to negate criminal intent.").

//

//

Specifically, when a defendant is charged, as here, with separate criminal acts of preparing false returns, as opposed to an ongoing criminal scheme to defraud, evidence of specific instances in which he did not prepare false returns is irrelevant and inadmissible. *United States v. Dobbs*, 506 F.2d 445, 447 (5th Cir. 1975) ("The trial court's exclusion of defendants' proffer of evidence exhibiting routine, noncriminal conduct as to some tax returns was correct. They were not charged with a scheme but with separate instances of criminal conduct and evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *see also United States v. Diallo*, 483 F. App'x 207, 208 (6th Cir. 2012) (unpublished per curiam decision) (upholding district court exclusion of 700 accurately filed tax returns); *United States v. Daulton*, 266 F. App'x 381, 386 (6th Cir. 2008) (unpublished decision) ("The government did not contend that the defendant always engaged in criminal activity when preparing tax returns, but rather that the defendant had a method for maximizing refunds by including deductions for expenses that were not incurred. Therefore, the proffered evidence of instances when Daulton prepared truthful returns is irrelevant to the charged instances."); *United States v. Sternstein*, 596 F.2d 528, 531 (2d Cir. 1979) ("If the report of the Special Agent only indicates that after audit a few returns were found not to contain erroneous deductions its probative value is obviously negligible . . . ."); *United States v. Stoehr*, 196 F.2d 276, 282 (3d Cir. 1952) ("If defendant's reason for introducing the 1946 return was merely to show the jury that he was honest in his dealing with the government in 1946 so as to negative intent for the years 1943, 1944, and 1945, then we think the 1946 return was properly excluded as lacking any probative value."). Because the evidence which Lara seeks would not be admissible at trial, it is not exculpatory or material to defense preparation, and it is therefore not subject to disclosure under *Brady* or Rule 16.

//

//

//

### III.   CONCLUSION

The United States has and intends to continue to fully comply with its discovery obligations under *Brady v. Maryland*, the Jencks Act, and Rule 16 of the Federal Rules of Criminal Procedure. The government has provided tax documents relevant to each charged count and reports of each person interviewed during the course of the investigation. The government has also provided the defense with a copy of all material seized from the hard drives of Lara's business. The government does not have in its possession any further interview reports or any documentation indicating that Lara filed nonfraudulent returns. Moreover, for the reasons discussed above, the information Lara requests is not subject to disclosure under either *Brady* or Rule 16. The Court should deny Lara's motion.

Respectfully submitted,

Dated:  May 12, 2017

PHILLIP A. TALBERT
United States Attorney

By:  /s/ JEREMY J. KELLEY
JEREMY J. KELLEY
Assistant United States Attorney