DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 306767
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone:  (415) 398-3900

Attorneys for Defendant **Emilio Lara**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>EMILIO LARA,<br><br>            Defendant. | Case No.  CR-15-00039-GEB<br><br>**MR.  LARA'S  OPPOSITION  TO  THE GOVERNMENT'S MOTIONS IN LIMINE**<br><br>Date:   March 16, 2018<br>Time:   9:00 a.m.<br>Court:  Hon. Garland E. Burrell, Jr. |

**I.**

## INTRODUCTION

Mr Lara is set for trial on 38 counts of aiding and assisting in the preparation and presentation of false and fraudulent income tax returns (pursuant to 26 U.S.C. §7206(2)) on March 20, 2018. On February 23, 2018, the government filed what it characterized as two motions in limine: (1) a motion "to exclude evidence of non-fraudulent returns" (doc. no. 59), and (2) a motion "to admit evidence of other acts" (doc. no. 60). The government's latter motion relates to three separate pieces of evidence the government argues should be deemed admissible in advance of trial: (1) "false statements on the charged tax returns," (2) "actions in preparing a fraudulent tax return for an undercover IRS agent," and (3) "the defendant's own tax returns."

Mr. Lara opposes the government's exclusion of non-fraudulent returns as well as its attempts to admit irrelevant or prejudicial additional evidence.

## II.

### EVIDENCE OF MR. LARA'S LAWFUL PREPARATION OF THOUSANDS OF PROPER TAX RETURNS FOR OTHER CLIENTS IS PROBATIVE AND SHOULD NOT BE EXCLUDED FROM TRIAL.

**A.    Evidence of Mr. Lara's Lawful Preparation of Tax Returns for Thousands of Customers Is Relevant to the Charges Against Him.**

The government seeks to exclude all evidence of Mr. Lara's lawful preparation of thousands of accurate tax returns for his customers, as it instead desires the evidence in the case be limited to those limited number of returns the government has alleged contain inaccurate deductions. The government claims that Mr. Lara should not be permitted to "introduce a handful of accurate returns." It mischaracterizes the evidence. In fact, there are thousands of other clients Mr. Lara assisted in filing tax returns during the charged period, clients whose returns were lawfully filed and contained no false information. These clients, whom Mr. Lara charged less than $200 each for an individual return, have alleged no impropriety, and the thousands of returns Mr. Lara assisted them in preparing and filing contain no known misrepresentations.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 319 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). The offense for which the government has charged Mr. Lara, willfully aiding in the preparation of fraudulent returns, requires as an element the offender's knowledge of his false misrepresentations, and a "bad purpose or evil motive." *United States v. Bishop*, 412 U.S. 346, 361 (1973). Yet it is unclear with what evil motive the government theorizes Mr. Lara would have acted in intentionally and fraudulently increasing deductions on the returns of

only a small percentage of his customers, generating what was likely only minor tax savings for those clients and doing nothing to increase his personal business revenue. In defending himself against the prosecution's case, it is incumbent on Mr. Lara to give the fact-finder a full and complete picture of his tax return preparation business, showing the nonsensical nature of the conduct which he is alleged to have intentionally engaged in. The preparation of fraudulent returns for 21 customers, in a vacuum, may seem a logically reasonable, if unwise and unlawful, criminal enterprise. When considered alongside thousands of properly filed returns over years of business, the conduct which the government alleges Mr. Lara committed seems far less likely to have been intentional, and instead suggests unintentional mistakes on only a very small percentage of the returns which Mr. Lara assisted in preparing. Indeed, the pattern of misrepresentations and excessiveness of service fees charged for those clients who benefitted from the excessive (and fraudulently obtained) returns can be important evidence of willfulness in the context of § 7206(2). *United States v. Conlin*, 551 F.2d 534, 536 (2d Cir. 1977). Naturally, so too can a pattern of lawful assistance and standardized service fees support the inference, and defense, of a lack of willfulness in those returns that diverge from the thousands of properly assisted clients'.

In investigating Mr. Lara's case, IRS agents interviewed many of his clients in order to verify the representations Mr. Lara made on their returns. Of these customers, only 21 gave rise to the allegations in the indictment. The remaining customers did not provide information that supported criminal charges. Discovery provided to the defense by the government in the form of images of flash drives seized from Mr. Lara indicates that, between the years 2008 and 2010, Mr. Lara assisted in the preparation of at least approximately 9,064 returns. Additional materials obtained by the defense indicate Mr. Lara assisted in preparing at least 109 additional returns in the year 2011. Together, these records indicate that Mr. Lara assisted in the preparation of at least approximately

9,173 returns in the years 2008 through 2011, and in so doing assisted at least approximately 5,975 different individual clients in that time frame.

The government's own authorities support the admission of the evidence it seeks to exclude. In *Sternstein*, for example, the Second Circuit explicitly permitted the admission of lawfully filed returns prepared by a tax preparer defendant in order to counter the government's theory that the defendant was filing fraudulent returns in an attempt to attract clients. *United States v. Sternstein*, 596 F.2d 528, 530-31 (2d Cir. 1979). Just like Mr. Lara, the defendant in *Sternstein* did not serve to directly profit from falsified returns, and only could have been motivated to make misstatements on his clients' behalf in order to generate business. *Ibid*. The Court held that in such factual circumstances, the relevance of lawfully filed returns for many of the defendant's customers was "clear." *Ibid*. It explained:

> [T]he Government's explanation of Sternstein's motive to falsify the returns despite his flat fee was that the bogus deductions were part of a scheme to generate new business by gaining inflated returns for his clients. Rebuttal of this contention by demonstrating that he produced no such illegal windfall for the overwhelming majority of his clients was unquestionably crucial to Sternstein's position that the few false returns were innocently prepared by him.

*Ibid*.

The government's citations to unpublished cases dealing with discrete instances of tax fraud are inapposite (and its citation to the unpublished decision in *United States V. Toney*, 983 F.2d 1080 (9th Cir. 1993) is improper). None of those cases involve a defendant charged with having produced dozens of inaccurate returns alleging small amounts of fraudulent deductions over the course of several years of business, while simultaneously preparing thousands of accurate returns. One case cited by the government did not in fact hold that the district court was correct to exclude evidence of the defendant's lawful tax returns, but instead merely held that any error in the exclusion of this

evidence was harmless in light of the overwhelming evidence of guilt. *United States v. Daulton*, 266 F. App'x 381, 387 (6th Cir. 2008).

The government argues it will be prejudiced by Mr. Lara's presentation of lawfully prepared returns because it will extend the length of the trial (despite the fact that the government has itself moved to admit evidence of Mr. Lara's lawfully filed personal tax returns). This is not prejudice to the government, and it is not something that need transpire in any event. Mr. Lara may efficiently present the jury with his relevant defense without unduly consuming court resources. He should be allowed an opportunity to do so.

**B.   Evidence of Mr. Lara's Lawful Preparation of Tax Returns Is Not Rendered Inadmissible by Rules 404(b) or 405.**

As a general matter, criminal defendants in federal court have a right to establish that they are a law abiding citizen as a means of refuting the charges against them. *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981); *see also Michelson v. United States*, 335 U.S. 469 (1948); Fed. R. Evid. 404. So too must a defendant be permitted to present evidence of his honesty or integrity, regardless of whether he testifies in his own defense, as such evidence "may be enough to raise reasonable doubt of the guilt of the accused." *United States v. Darland*, 626 F.2d 1235, 1238 (5th Cir. 1980). And where character may create a reasonable doubt as to a defendant's guilt, the treatment of character as a non-issue is tantamount to impairing his ability to present a defense. *United States v. John*, 309 F.3d 298, 305 (5th Cir. 2002).

Nonetheless, the government attempts to exclude evidence of Mr. Lara's lawful preparation of tax returns under Fed. R. Evid. 404(b) and 405. Of course, Rule 404(b)(2) specifically allows a party to introduce evidence of an individual's other acts to show intent or knowledge. It is well established that "reverse" 404(b) evidence – that is, evidence of "good acts" rather than bad ones –

is governed by the same principles as any other act offered pursuant to Rule 404(b)(2). *See United States v Thomas*, 134 F.3d 975, 979 (9th Cir. 1998); *United States v Shavin*, 287 F.2d 647, 654 (7th Cir. 1961); *United States v Garvin*, 565 F.2d 519, 521-522 (8th Cir. 1977); *United States v Quattrone*, 441 F.3d 153, 191 (2nd Cir. 2006); *United States v Lucas*, 357 F.3d 599 (6th Cir. 2003). Thus, where the defendant offers evidence that "provides a plausible alternative to the Government's suggestion that he had criminal intentions," it should be admitted. *United States v. Marlinga*, 457 F. Supp. 2d 769, 776 (E.D. Mich. 2006).

Intent being a critical element which the government must prove at trial, Mr. Lara should be permitted an opportunity to show that any inaccurate statements included on returns he aided in filing were not intentionally included, but rather, were the result of mistake or inadvertence. To counter the government's showing of intent, Mr. Lara must be allowed to produce evidence of his thousands of other lawful filings, which represent the strongest evidence that Mr. Lara did not intentionally defraud the government in the handful of filings on which it has identified him as having included slightly overstated returns.

**III.**

**ADDITIONAL STATEMENTS ON THE CHARGED TAX RETURNS ARE IRRELEVANT "OTHER ACTS" EVIDENCE RENDERED INADMISSIBLE BY FED. R. EVID. 404(b).**

The government seeks to introduce evidence of other inaccurate information on returns Mr. Lara is charged with having fraudulently claimed deductions. It argues these additional misrepresentations were "inextricably intertwined" with the charged offenses, forming a "single criminal episode." *See United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993). The language of a "single criminal episode," however, arises where the government seeks to introduce acts that "provide 'necessary context for' the charges against the defendant." *United States v. Williams*, No.

2:12-CR-463 JCM (VCF), 2015 U.S. Dist. LEXIS 39423, at *13 (D. Nev. Mar. 26, 2015) (quoting *Williams*, 989 F.2d at 1070). That is not the case here, where the government wishes to introduce evidence of additional wrongs committed by Mr. Lara simply to show that he had a propensity for doing so. The *Williams* Court explained:

> The similarity between the conduct alleged in the indictment and the other acts alleged does not render the other acts "inextricably intertwined" with those events surrounding the indictment. Indeed, character evidence is most prejudicial when the other acts are similar to those charged against the defendant.

*Ibid*.

The use of evidence pursuant to Rule 404(b) "must be narrowly circumscribed and limited" and "may not be introduced unless the government establishes its relevance to an actual issue in the case." *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985). The rule is designed to avoid "a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." 2 J. Weinstein & M. Berger, Weinstein's Evidence para. 404[04], at 404-29 (1988) (citations and footnote omitted).

If the government seeks to introduce the proffered evidence to show knowledge, it must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act. *United States v. Hernandez-Miranda*, 601 F.2d 1104 (9th Cir. 1979); *United States v. Mayans*, 17 F.3d 1174, 1181-1182 (9th Cir. 1994). The government has not explained how any such logical connection exists here, where there is no reason to believe that Mr. Lara's knowledge regarding a client's charitable contributions (or the proper manner by which such contributions may be calculated for purposes of a tax deduction) has anything to do with Mr. Lara's knowledge regarding a client's eligibility for other deductions (or how to

properly calculate them). Likewise, where the government relies on a theory of intent, it must demonstrate that there is a "logical thread" connecting Mr. Lara's alleged misrepresentations. *United States v. Mehrmanesh*, 689 F.2d 822, 832 (9th Cir. 1982). The government has not so demonstrated here, simply asserting that where a tax preparer has gotten one calculation wrong, additional miscalculations show he did so on purpose. The government has not defeated the restrictions imposed by Rule 404(b), and its offered evidence should be excluded.

**IV.**

## EVIDENCE OF THE UNCHARGED PREPARATION OF AN ADDITIONAL TAX RETURN FOR AN UNDERCOVER AGENT IS INADMISSIBLE.

The government again attempts to offer blatantly improper 404(b) evidence in the form of Mr. Lara's allegedly fraudulent preparation of an income tax return for an undercover agent. The government argues that it is not flagrantly flaunting the restrictions of Rule 404(b) by claiming its proffered evidence shows identity, intent, preparation, plan, knowledge, absence of mistake, lack of accident, and willfulness. Ignoring the fact that this claim is entirely conclusory, it is also not particularly imaginative, as the government's stated purposes for the admission of this evidence follow the examples of admissible purposes in Rule 404(b)(2) verbatim. The government does deserve some credit for creativity, however, as none of these proffered purposes has any factual relation to the actual evidence the government has moved to admit. The fact that Mr. Lara prepared an inaccurate return for a government operative provides no evidence that Mr. Lara prepared inaccurate returns for other taxpayers. It is not evidence of identity, as a single, solitary transaction in which Mr. Lara was the person who prepared the return for the client is no evidence that he prepared the returns for all clients of his business. Nor is it evidence of intent, as the government can point to nothing in Mr. Lara's interactions with the undercover agent that is any more indicative of

criminal intent (rather than inadvertence) than anything that exists in any of the charged returns. In any event, even if the evidence were otherwise admissible to show intent, it would remain inadmissible if its probative value were substantially outweighed by its prejudicial impact under Rule 403. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). The prejudicial effect of a recording of Mr. Lara's interactions with an undercover officer who is specifically seeking to catch him in lies cannot be understated, and any arguable probative value in evidence of Mr. Lara preparing an additional false return in an audio recording is easily outweighed by that prejudice.

Quite simply, having charged 38 instances of criminal conduct, the government seeks to offer evidence of an uncharged 39th in order to show that Mr. Lara had a propensity to engage in the conduct charged. Tellingly, the government offers no cases in which similar evidence was admitted. This is classic 404(b)(1) evidence, and it is evidence that should not be admitted at trial.

**V.**

### MR. LARA'S PERSONAL TAX RETURNS ARE IRRELEVANT AND SHOULD BE EXCLUDED.[1]

Evidently unsatisfied with its evidence that Mr. Lara was a skilled tax preparer who would only include inaccurate representations on returns if he knew fully of his fraud and simply sought to flaunt the government's laws, the government seeks to introduce Mr. Lara's own personal tax returns for the purpose of showing, as it describes, "that tax returns are accompanied by a jurat, which puts taxpayers on notice that they have a legal obligation to provide truthful information on the return." Doc. no. 60, p. 5. The government seeks the introduction of this evidence despite the fact that it fights vociferously against the introduction of evidence of Mr. Lara's preparation of thousands

---

[1] The government has failed to disclose evidence related to Mr. Lara's personal tax returns to the defense. Mr. Lara opposes the government's admission of this evidence, but is unable to fully respond to the government's arguments in light of the fact that Mr. Lara has not yet been provided the evidence the government moves to admit.

Mr. Lara's Motion to Continue Trial
*U.S. v. Lara*,
Case No. CR-15-00039-GEB                    9

of tax returns for his clients. The government elects to single out a small fraction of returns, those that Mr. Lara allegedly filed on his own behalf, to make its showing. It does not explain why the jurat on these returns acts as any greater evidence of knowledge than the same jurat on the returns actually charged in the indictment, nor on any of the other returns that Mr. Lara filed. Instead, it seems, the government simply wishes to put before the jury irrelevant and unnecessary information regarding Mr. Lara's personal finances (rather than the entirely less inflammatory, yet at least equally probative, evidence of the returns of Mr. Lara's other clients).

This is separate and apart from the fact that the government does not appear to have any evidence that Mr. Lara actually personally prepared his own income tax returns, rather than delegating that task to an employee or seeking the aid of a third party to assist in the preparation of his own filings. The government's lack of evidence of Mr. Lara's personal preparation of his own returns stands in stark contrast to the returns his clients personally witnessed him prepare on their behalf during their visits to his office, all of which are far more probative than Mr. Lara's personal tax returns.

The government's request to pre-admit this evidence is particularly audacious in light of their motion to exclude evidence of lawfully prepared returns for Mr. Lara's other clients. Undoubtedly, these returns for other clients are far more similar to the charged conduct than Mr. Lara's own personal tax returns, and do much more to establish the extent of Mr. Lara's knowledge and willfulness than the limited selection of returns he prepared on his own behalf. Yet the government seeks to admit the latter while excluding the former. The Court should reject its scheme.

There is simply no reason why this Court should admit a small number of Mr. Lara's personal tax returns while excluding thousands of client tax returns that show the very same thing the government offers Mr. Lara's personal tax returns to show. This is especially so where Mr. Lara

seeks to offer the thousands of client tax returns for an additional reason, to show a lack of criminal intent. The government would like to carefully select the pieces of evidence it wishes to present to the jury, hiding from them the fact that Mr. Lara dutifully prepared thousands of accurate returns while showing them the handful that include misrepresentations and an even smaller handful that Mr. Lara accurately prepared for himself. The government is free to introduce evidence in the manner it wishes (subject to law). But it may not use the Federal Rules of Evidence to restrict Mr. Lara's ability to offer evidence in the manner he wishes, nor may it violate the law by offering inadmissible evidence because it would like to make a point it would otherwise have to make with less favorable evidence.

The Court is faced with three categories of returns: (1) inaccurate, client tax returns, charged in the indictment, (2) accurate client tax returns, not charged in the indictment, and (3) accurate personal tax returns, not charged in the indictment. The government seeks to introduce category (3) in order to show that Mr. Lara knew of his obligation to file accurate returns. Yet categories (1) and (2) show the exact same thing, and in a far more probative manner. Meanwhile, the government seeks to exclude category (2). Yet that category of evidence is necessary to show a lack of criminal intent, and does so in a probative manner. The government can offer no satisfactory explanation for the mental gymnastics it asks the Court to perform in order to determine that categories (1) and (3) are admissible, while category (2) is not.

The Court should exclude evidence of Mr. Lara's personal tax returns as irrelevant to knowledge or intent. It should admit evidence of lawfully prepared tax returns for Mr. Lara's other clients as relevant to intent.

**VI.**

**ALL OF THE GOVERNMENT'S 404(b) EVIDENCE SHOULD BE EXCLUDED DUE**

**TO UNTIMELY NOTICE.**

Even if the government's offered evidence was admissible under one of its theories, exclusion is required due to the tardiness of the government's notice to the defense. The government is required to provide "reasonable notice . . . before trial" of its intent to rely on evidence of crimes, wrongs, or other acts. Fed. R. Evid. 404(b)(2). This it must do in a manner that allows the defendant adequate time to review the evidence in preparation for trial. The reasonableness of any deadline "will depend largely on the circumstances of each case." Fed. R. Evid. 404(b), advisory comm. note to 1991 amendment. One Court in this district has ordered the disclosure of Rule 404(b) evidence sixty days before trial, even where it was unclear any such evidence existed. *United States v. Jack*, 257 F.R.D. 221, 234 (E.D. Cal. 2009); *see also United States v. Nachamie*, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000) [requiring the government provide 404(b) notice one month before trial where it has "offered no good reason why it should not"]; *United States v. Peggs*, No. 07-0239, 2009 U.S. Dist. LEXIS 3674, 2009 WL 104295 (W.D. Mich. Jan. 14, 2009) [ordering notice six months before trial].

Twenty-seven days before trial and nineteen days *after* the February 2, 2018 trial confirmation hearing, the government provided notice of its intent to rely on Rule 404(b) evidence, including other alleged misstatements on returns Mr. Lara prepared, the return Mr. Lara prepared for an undercover agent, and Mr. Lara's own personal tax returns. This is despite the fact that it has repeatedly refused to turn over this very discovery to Mr. Lara, instead arguing it was irrelevant to the charges. Critically, the government still has not produced these materials to Mr. Lara, who remains entirely unable, eighteen days before trial, to prepare for their use. The result is that Mr. Lara is unable to adequately oppose the introduction of this evidence, as it is evidence which has not been disclosed. So too is Mr. Lara unable to adequately prepare to defend against this evidence at trial for

*U.S. v. Lara*,
Case No. CR-15-00039-GEB                    12

the same reason.

Where the government fails to comply with Rule 404(b)(2)'s requirement of reasonable notice, the remedy is exclusion of the offered evidence. *United States v. Vega*, 188 F.3d 1150, 1155 (9th Cir. 1999). Such should be the remedy here. The government had months to alert the defense to its intent to use additional evidence against Mr. Lara, and it is the government that has been urging trial for the entirety of that time. Rather than provide suitable notice, the government instead affirmatively claimed that some of this evidence is inadmissible, refusing to turn over evidence of Mr. Lara's personal tax returns despite him having made discovery requests for the materials in June of last year. At this point in the proceedings, with trial looming and Mr. Lara still not having access to these materials, exclusion is appropriate both because there is no theory under which the evidence is admissible, and because the government has provided late notice of its intent to rely thereon.

## VII.

## CONCLUSION

For all of the above reasons, Mr. Lara respectfully requests this Court deny the government's motion to exclude evidence of Mr. Lara's lawful preparation of accurate returns for his other clients. Mr. Lara also requests this Court deny the government's motions to admit evidence of additional, uncharged misrepresentations; a fraudulent tax return prepared for an undercover agent; and Mr. Lara's personal tax filings.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

Dated: March 2, 2018      By: /s/ David J. Cohen
                      DAVID J. COHEN, ESQ.

                      Attorneys for Defendant **Emilio Lara**

Mr. Lara's Motion to Continue Trial
*U.S. v. Lara*,
Case No. CR-15-00039-GEB      13