McGREGOR W. SCOTT
United States Attorney
MATTHEW G. MORRIS
MIRIAM R. HINMAN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:15-CR-00039-GEB |
|---|---|
| Plaintiff, | UNITED STATES' REPLY IN SUPPORT OF ITS MOTIONS IN LIMINE |
| v. | |
| EMILIO LARA, | DATE: March 16, 2018
TIME: 9 a.m.
COURT: Hon. Garland E. Burrell, Jr. |
| Defendant. | |

The government has filed two motions in limine. First, the government moved to exclude evidence of non-fraudulent returns. Gov.'s Mot., ECF No. 59 ("Gov.'s Mot. #1"). Second, the government moved to admit evidence of other false statements on the charged tax returns, the defendant's actions in preparing a fraudulent tax return for an undercover IRS agent, and evidence of Lara's personal tax filings for the years 2008 to 2010. Gov.'s Mot, ECF No. 60 ("Gov.'s Mot. #2"). Because Lara has opposed the motions, *see* Def.'s Opp., ECF No. 64, the government now files this reply in support of both motions.

I. **THE COURT SHOULD NOT PERMIT LARA TO INTRODUCE EVIDENCE OF NON-FRAUDULENT TAX RETURNS THAT HE HAS PREPARED**

In the government's motion in limine to exclude evidence of non-fraudulent returns, the government presented extensive case law from the Ninth Circuit and other circuits holding that defendants cannot establish their innocence by showing that they did not commit crimes on other occasions, and in particular, evidence of non-fraudulent tax returns is not admissible when a defendant is

charged with specific instances of preparing fraudulent tax returns. *See* Gov.'s Mot. #1 at 2-3. In opposition, the defendant has ignored most of the cases cited by the government. *See* Def.'s Opp. at 2-6. To argue for admission of the non-fraudulent returns, Lara relies on *United States v. Sternstein*, 596 F.2d 528 (2d Cir. 1979), which the government has already explained is not applicable to Lara's case.

In *Sternstein* the Second Circuit held that an IRS analysis of both fraudulent and non-fraudulent tax returns was relevant when (1) the analysis showed that only a small fraction of the tax preparer's returns were fraudulent and (2) the government argued the case like a scheme, rather than separate instances of fraudulent returns, by asserting that the tax preparer's motive was to attract clients. 596 F.2d at 530-31. Neither of those conditions is present in Lara's case. First, there is no analysis showing mostly accurate returns. Lara asserts that his thousands of other returns were accurate, but he seems to assume that returns are accurate simply because the government has not brought criminal charges as to all of them. *See* Def.'s Opp. at 2-4. It would be an extreme waste of government resources to interview every one of Lara's thousands of clients in order to determine whether each return was false and potentially chargeable. Lara claims that IRS agents interviewed "many of his clients" and "only 21 gave rise to the allegations in the indictment." *Id.* at 3. In fact, the government has previously explained that IRS agents interviewed only 24 of his clients. Gov.'s Opp. to Mot. Compel at 2, ECF No. 46. Thus, the vast majority of interviews gave rise to criminal charges. There is no evidence that Lara prepared mostly accurate returns.

Second, the government is not arguing that Lara had a scheme to attract clients by inflating deductions. Contrary to the defendant's claim, the government is not required to prove any motive in section 7206 cases but is merely required to prove intentional violation of a known legal duty. *United States v. Pomponio*, 429 U.S. 10, 12 (1976), clarifying *United States v. Bishop*, 412 U.S. 346 (1973); *United States v. Easterday*, 564 F.3d 1004, 1008-09 (9th Cir. 2009). Because the government is not claiming that Lara's motive for filing fraudulent returns was to attract clients, the Second Circuit's reasoning in *Sternstein* does not apply to this case.

Lara also asserts that the government's cases did not deal with excluding thousands of accurate returns. Def.'s Opp. at 4. The courts' reasoning for excluding non-fraudulent returns is not dependent on the number of accurate returns that the defendant proposes to offer, so courts often do not discuss that

UNITED STATES' REPLY IN SUPPORT OF ITS
MOTIONS IN LIMINE

2

number. *See, e.g., United States v. Toney*, 983 F.2d 1080 (9th Cir. 1993) (table); *United States v. Dobbs*, 506 F.2d 445 (5th Cir. 1975). However, the Sixth Circuit specifically noted that the defendant wanted to argue that over 700 uncharged returns were accurate, and it still affirmed the district court's exclusion. *United States v. Diallo*, 483 Fed. App'x 207, 208 (6th Cir. 2012).[1]

Because uncharged non-fraudulent returns are irrelevant, courts generally do not reach any Rule 404(b) question. *See* Gov.'s Mot. #1 at 5. However, if the Court wishes to rule in the alternative, the returns should also be excluded under Rule 404(b) because good acts are not admissible under Rule 404(b) to demonstrate a lack of criminal intent. *See id.* at 4. The defendant's citation to a Ninth Circuit case dealing with entrapment is inapposite because predisposition is an issue in entrapment cases. *See* Def.'s Opp. at 6 (citing *United States v. Thomas*, 134 F.3d 975, 979 (9th Cir. 1998)). In sum, the Court should not permit Lara to introduce evidence of non-fraudulent returns that he has prepared.

## II. <u>OTHER FALSE STATEMENTS IN THE CHARGED TAX RETURNS ARE ADMISSIBLE.</u>

In the government's second motion in limine, it explained that the defendant's falsely inflated $500 entries on the charged returns for charitable contributions other than by cash or check are admissible because they fall under the "single criminal episode" rule, are alternatively "inextricably intertwined," or alternatively are admissible under Rule 404(b) for intent, knowledge, and absence of mistake. Gov.'s Mot. #2 at 2-4. The defendant asserts that the $500 entry is not part of a single criminal episode with the charged inflated deductions on the same return, but he provides no explanation for that assertion. *See* Def.'s Opp. at 6-7. In contrast, the government has explained that it expects each taxpayer to testify about his interaction with Lara on a single occasion, on which the taxpayer told Lara about his expenses and Lara generated a return with multiple false inflated deductions. The government has simply indicted Lara for less than all of his actions during each episode. As each $500 entry is part of a single criminal episode with the charged deductions and is inextricably intertwined with them, the Court need not decide whether the evidence could also be admitted under Rule 404(b) as other acts

---

[1] In both Sixth Circuit opinions cited by the government, the court concluded that the uncharged returns were irrelevant but also ruled in the alternative that any error would be harmless. *See United States v. Diallo*, 483 Fed. App'x 207, 208 (6th Cir. 2012); *United States v. Daulton*, 266 Fed. App'x 381, 386-87 (6th Cir. 2008).

introduced for a permissible purpose.

Should the Court reach the Rule 404(b) question, the defendant also argues that "the government wishes to introduce evidence of additional wrongs committed by Mr. Lara simply to show that he had a propensity for doing so," and that there is no logical thread connecting the $500 entries to Lara's intent with regard to the charged counts. Def.'s Opp. at 7-8. The defendant is incorrect. Because $500 was the maximum deduction for charitable contributions other than by cash or check that did not require additional documentation, Lara's repeated $500 entries are strong evidence that he intended to state falsely inflated deductions and such deductions were no accident. Thus, the Court should admit the $500 entries as part of a single criminal episode, inextricably intertwined, or permissible under Rule 404(b).

### III. THE DEFENDANT'S ACTIONS IN PREPARING A FRAUDULENT TAX RETURN FOR AN UNDERCOVER IRS AGENT ARE ADMISSIBLE.

The government argued in its motion in limine that hearing evidence about Lara's preparation of a fraudulent return for an undercover agent, especially the recording of their conversation, would help the jury determine that it was Lara who created the inflated deductions and that the reported deductions were intentional, not an accident. Gov.'s Mot. #2 at 4. In response, the defendant argues that the undercover operation provides no evidence of identity or intent, and the defendant complains that the government provided no cases addressing this situation. *See* Def.'s Opp. at 8-9. The government is not aware of any Ninth Circuit opinions dealing with this specific situation, but other circuits have admitted evidence that defendants in § 7206(2) cases also prepared a fraudulent return for an undercover agent. *See, e.g.*, *United States v. Cadet*, 664 F.3d 27, 29, 33 (2d Cir. 2011); *United States v. Al-Suqi*, 581 Fed. App'x 212, 214-15 (4th Cir. 2014). The Second Circuit explained its holding as follows:

> At trial, Cadet contested the willfulness of his conduct by arguing that, in preparing his clients' returns, he either relied on inaccurate information provided by the clients or made mistakes. Evidence that Cadet knowingly and intentionally prepared a false tax return for Agent Green by inserting inflated deductions on the Form 1040 thus provided a reasonable basis to infer that the inflated deductions that formed the basis for the 16 counts of conviction were likewise entered knowingly and intentionally.

*Cadet*, 664 F.3d at 33. Lara's preparation of a fraudulent return for the undercover agent is admissible for precisely the same reason.

UNITED STATES' REPLY IN SUPPORT OF ITS MOTIONS IN LIMINE

4

## IV. THE DEFENDANT'S OWN TAX FILINGS ARE ADMISSIBLE.

The government argued in its motion that Lara's own tax filings for the years 2008 to 2010 are admissible to show that he knew of the legal obligation to tell the truth, because those filings require a jurat. Gov.'s Mot. #2 at 5. Lara first claims those filings are irrelevant because the jurat proves no more than the jurat on the charged returns that he prepared and there is no evidence that Lara personally prepared his own returns. Def.'s Opp. at 9-11. Because the jurats state different obligations for the taxpayer and the preparer, Lara's agreement to a jurat for his personal returns provides additional evidence of his knowledge of the legal obligation to tell the truth compared to the jurats on the returns that he prepared. As the taxpayer, Lara would have been legally required either to sign the jurat on a paper tax form or to sign the jurat on a Form 8879 authorizing a tax preparer to e-file on his behalf. Next, Lara complains that the government wishes to put before the jury unnecessary information about his personal finances. Def.'s Opp. at 10. In fact, the government wishes to admit the fact of Lara's tax filings only for the jurat that they required, so the government has no objection to excluding the numbers related to Lara's personal finances during the government's case-in-chief.

Lara also argues that he cannot respond fully because the government has not provided the evidence that it moves to admit. Def.'s Opp. at 9 n.1. The government proposes to admit the IRS transcripts of tax filings that it provided to the defense on July 6, 2017. Lara is the one who has insisted on the relevance of his complete personal tax returns and has demanded them from the government. After the defense request on February 23, 2018, the government agreed on February 28, 2018, that it would attempt to obtain and produce the complete tax returns with schedules for tax years 2008 to 2010. However, the government does not believe the complete returns are relevant. The government merely seeks to admit the existence of Lara's personal tax filings as a basis for anticipated witness testimony that filings require a jurat, as described above.

## V. THE GOVERNMENT'S RULE 404(B) NOTICE WAS NOT UNTIMELY

Rule 404(b) requires a prosecutor to "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b). The government satisfied this "reasonable notice" requirement by providing notice to the defense in a letter on February 21, 2018 – one month before the March 20, 2018, trial date. Lara cites cases in which judges issued scheduling

orders requiring the government to turn over Rule 404(b) evidence a month or more before trial, *see* Def.'s Opp. at 12, but those cases have no bearing on when the government must provide notice in the absence of such a scheduling order.  The defense also makes the misleading argument that notice is inadequate because the government "has repeatedly refused to turn over this very discovery to Mr. Lara." Def.'s Opp. at 12.  In fact, the government produced to the defense the evidence of $500 entries for charitable contributions other than by cash or check, the undercover operation, and the IRS account transcripts of Lara's personal tax filings on or before July 6, 2017.  As discussed above, the government has agreed to attempt to obtain and produce Lara's complete tax returns for tax years 2008 to 2010, per the defense request on February 23, 2018, but the government does not believe the complete returns are relevant.  Therefore, the government has provided reasonable notice of its proposed 404(b) evidence.

### VI.     CONCLUSION

For the foregoing reasons, the Court should exclude evidence of non-fraudulent returns that Lara has prepared, *see* Gov.'s Mot. #1, and it should admit the government's other acts evidence, *see* Gov.'s Mot. #2.

Dated:  March 7, 2018

McGREGOR W. SCOTT
United States Attorney

By: /s/ MIRIAM R. HINMAN
MIRIAM R. HINMAN
MATTHEW G. MORRIS
Assistant United States Attorneys