```
 1
 2
 3
 4                     UNITED STATES DISTRICT COURT
 5                    EASTERN DISTRICT OF CALIFORNIA
 6
 7  UNITED STATES OF AMERICA,        No.  2:15-cr-00039 GEB
 8            Plaintiff,
 9       v.                          DECISION ON IN LIMINE MOTIONS
10  EMILIO LARA,
11            Defendant.
12
```

On February 23, 2018, the United States of America ("the government") filed two motions in limine. In the first motion, the government moves "to exclude evidence that some uncharged tax returns prepared by Emilio Lara were not fraudulent." Gov't's Mot Exclude Non-Fraudulent Tax Returns ("Mot. I") at 1:16-17, ECF No. 59. The government argues that "[e]vidence . . . Lara prepared certain accurate returns is not relevant to whether the thirty-eight returns charged in the indictment were fraudulent," that "[e]ven if such evidence were minimally relevant, it should be excluded under Rule 403," and, finally, that "even if such evidence were relevant, Rules 404(b) and 405 would make it inadmissible character evidence." Id. at 17-20. The government moves in the second motion "to admit other acts of the defendant either as relevant evidence of the crimes as charged, as conduct that is inextricably intertwined with those crimes, or under Federal Rule of Evidence 404(b)." Gov't's

1

Mot Admit Evid. Other Acts ("Mot. II") at 1:17-19, ECF No. 60. The government specifies it seeks to introduce evidence of other "false statements on the charged tax returns," id. at 2:14, "actions in preparing a fraudulent tax return for an undercover IRS agent," id. at 4:10-11, and "the defendant's own tax returns," id. at 5:14. On March 2, 2018, Defendant Emilio Lara ("Defendant") filed an opposition to both of the government's in limine motions. See Opp'n Gov't's Mot.'s In Limine ("Opp'n"), ECF NO. 64.

The government argues in its first in limine motion that "'[a] defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions,' and therefore such evidence is 'properly excluded as immaterial.'" Mot. I at 2:9-11 (quoting Herzog v. United States, 226 F.2d 561, 565 (9th Cir. 1955), adhered to on reh'g, 235 F.2d 664 (9th Cir. 1956)). Defendant does not explain how Herzog can be disregarded. Herzog makes clear that other good acts are not relevant evidence of a lack of criminal intent, and the evidence is not otherwise admissible because "specific acts of good character [are] inadmissible under Rules 404(b) and 405(b) to prove [Defendant]'s action in conformity therewith." United States v. Ellisor, 522 F.3d 1255, 1270-71 (11th Cir. 2008); cf. United States v. Diaz, 961 F.2d 1417, 1419 (9th Cir. 1992) ("A defendant's propensity to engage in large scale drug dealing, however, is not an admissible character trait" under Rule 404(a)). Defendant cites United States v. Thomas, 134 F.3d 975, 979 (9th Cir. 1998), as amended on denial of reh'g (Apr. 10, 1998), but that case is inapposite because it is specific to an

2

entrapment defense which is inapplicable in this case.

Defendant also argues the uncharged filings should be admissible under the reasoning of United States v. Sternstein, 596 F.2d 528 (2d Cir. 1979). In Sternstein, the Second Circuit noted the "familiar proposition" that "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." 596 F.2d at 530. But the Second Circuit also concluded that where the government's "explanation of Sternstein's motive to falsify the returns despite his flat fee was that the bogus deductions were part of a scheme to generate new business by gaining inflated returns for his clients," "[r]ebuttal of this contention by demonstrating that he produced no such illegal windfall for the overwhelming majority of his clients was unquestionably crucial to Sternstein's position that the few false returns were innocently prepared by him." Id. at 530-31.

The government argues "Sternstein does not apply to [Defendant]'s case because no analysis demonstrating mostly accurate returns exists, and it would not be feasible to interview every one of [Defendant]'s customers in order to determine what proportion of returns was fraudulent." Mot. I at 3:17-19. The government further argues in reply to Defendant's opposition that the IRS interviewed only twenty-four of his clients, and the majority of those interviews gave rise to criminal charges. See Reply Supp. Mot. In Limine ("Reply") at 2:5-25, ECF No. 66. Further, the government argues it seeks only to prove intentional violation of a known legal duty, not the existence of a scheme to attract clients by inflating deductions.

Even if the Sternstein exception applies in the Ninth Circuit, the government has shown it is inapplicable to the facts of this case.

In the government's second in limine motion, it moves for a ruling on the admissibility of "false statements on the charged tax returns," Mot. II at 2:14, "actions in preparing a fraudulent tax return for an undercover IRS agent," id. at 4:10-11, and "the defendant's own tax returns," id. at 5:14.

The government argues that "[i]n addition to the false and inflated deductions explicitly charged for each of the 38 counts in the indictment, the defendant also inflated other categories of deductions on many of those same tax returns." Mot. II at 2:15-16. The government seeks introduction of these other falsities under the doctrine that the false information is inextricably intertwined with the charged conduct or is part of a single criminal episode. See Mot. II at 2:15-3:14. Alternatively, the government argues the evidence is admissible under Federal Rule of Evidence 404(b). Id. at 3:15-4:9.

The other alleged falsities, contained within the same tax documents as those charged in the indictment, are part of a "single criminal episode." Id. at 2:26 (quoting United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993)). As the government argues, "[t]he policies underlying rule 404(b) are inapplicable [since the offenses were] committed as part of a 'single criminal episode' [and do not] become other acts simply because the defendant 'is indicted for less than all of his actions.'" Williams, 989 F.2d at 1070 (quoting United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987)). Therefore, the

other allegedly false entries are admissible as parts of the same criminal episodes charged.

Next, the government argues the admissibility under Federal Rule of Evidence 404(b) of "the testimony of, and video from, an undercover IRS agent who posed as a taxpayer and asked the defendant to fill out a tax return for him." Mot. II at 4:11–13. Under Rule 404(b):

> evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

United States v. Mayans, 17 F.3d 1174, 1181 (9th Cir. 1994). The government addresses the four factors, arguing:

> Evidence that it was the defendant himself (rather than an office clerk or some other person) who created the inflated deductions on behalf of the undercover agent proves a material point. The defendant, via pretrial litigation, has indicated that he might proffer a defense that his fraudulent tax refunds were "mistakes" or "accidents" rather than willful efforts to create fraudulent returns. Hearing a recording of the interaction between the defendant and the undercover agent will help the jury determine whether the defendant's entries on tax returns were accidents. Thus, the identity of the person making the false entries and the fact that those falsehoods match the falsehoods on the charged counts are probative of the material point of identity and the defendant's mens rea. Mayans, 17 F.3d at 1181.
>
> The return prepared for the undercover was not "too remote in time." Mayans, 17 F.3d at 1181. The undercover operation was conducted by the IRS in March 2011. The returns charged in the indictment were for tax years 2008 through 2010 (which would have been due to

5

> the IRS between April 2009 and April 2011.) Thus, the undercover operation occurred after some of the charged counts in the indictment (approximately Counts 1 through 34), but before other counts in the indictment (approximately Counts 35 through 38).
>
> The evidence will be more than sufficient to prove that the defendant committed the other act: he is on a video recording made by the undercover agent. <u>Mayans</u>, 17 F.3d at 1181.
>
> Finally, the defendant's actions in the undercover operation are not just similar, but are nearly identical to the conduct charged in the indictment. <u>Mayans</u>, 17 F.3d at 1181. He took information provided to him by a purported taxpayer and prepared a tax return with four categories of information that were false, including unreimbursed employee expenses and charitable contributions.

Mot. II at 4:21-5:12.

    Defendant retorts:

> Ignoring the fact that this claim is entirely conclusory, it is also not particularly imaginative, as the government's stated purposes for the admission of this evidence follow the examples of admissible purposes in Rule 404(b)(2) verbatim. . . . The fact that [Defendant] prepared an inaccurate return for a government operative provides no evidence that [Defendant] prepared inaccurate returns for other taxpayers. It is not evidence of identity, as a single, solitary transaction in which [Defendant] was the person who prepared the return for the client is no evidence that he prepared the returns for all clients of his business. Nor is it evidence of intent, as the government can point to nothing in [Defendant]'s interactions with the undercover agent that is any more indicative of criminal intent (rather than inadvertence) than anything that exists in any of the charged returns. In any event, even if the evidence were otherwise admissible to show intent, it would remain inadmissible if its probative value were substantially outweighed by its prejudicial impact under Rule 403. <u>United States v. Romero</u>, 282 F.3d 683, 688 (9th Cir. 2002).

> The prejudicial effect of a recording of [Defendant]'s interactions with an undercover officer who is specifically seeking to catch him in lies cannot be understated, and any arguable probative value in evidence of Mr. Lara preparing an additional false return in an audio recording is easily outweighed by that prejudice.
>
> Quite simply, having charged 38 instances of criminal conduct, the government seeks to offer evidence of an uncharged 39th in order to show that Mr. Lara had a propensity to engage in the conduct charged. Tellingly, the government offers no cases in which similar evidence was admitted. This is classic 404(b)(1) evidence, and it is evidence that should not be admitted at trial.

Opp'n at 8:11-9:13. Defendant has made clear in his opposition that he may seek to present evidence at trial that any false entries were mistakes or accidents, and he has also indicated that other employees may have been responsible for the work done on charged returns. The government has demonstrated that the evidence it seeks to introduce is competent to show, at the very least, identity, absence of mistake, and plan.

Defendant also argues this evidence should be excluded under Federal Rule of Evidence 403. The test is whether the "probative value is substantially outweighed by a danger of . . . <u>unfair</u> prejudice." Fed. R. Evid. 403 (emphasis added). Defendant misstates the Rule 403 standard, arguing the issue is whether "its probative value [is] substantially outweighed by its prejudicial impact." Opp'n at 9:2-3. Defendant conflates prejudice with unfair prejudice when he argues that "[t]he prejudicial effect of a recording of [Defendant]'s interactions with an undercover officer who is specifically seeking to catch him in lies cannot be understated." Opp'n at 9:5-7. The balance

under Rule 403 favors admission.

The government also seeks to introduce several of Defendant's own income tax returns for purposes of getting into evidence their attestation clauses. See Mot. II at 5:15-21. In support of admitting the jurats from Defendant's tax returns, the government argues:

> For tax years 2008 through 2010, the defendant filed tax returns in his own name. Those tax returns, and information about those returns maintained within records by the IRS, are admissible under Rule 404(b) to prove intent, absence of mistake, lack of accident, and the defendant's mens rea. The government anticipates calling a witness to authenticate that tax returns are accompanied by a jurat, which puts taxpayers on notice that they have a legal obligation to provide truthful information on the return. Thus, [Defendant]'s own tax returns, even if not fraudulent, are admissible to show that he knew of the legal obligation to tell the truth on tax returns, which is evidence of willfulness.

Mot. II at 5:15-21. Defendant counters:

> [The government] does not explain why the jurat on these returns acts as any greater evidence of knowledge than the same jurat on the returns actually charged in the indictment, nor on any of the other returns that [Defendant] filed. Instead, it seems, the government simply wishes to put before the jury irrelevant and unnecessary information regarding [Defendant]'s personal finances . . . .

Opp'n at 10:2-8. Defendant further argues:

> [T]he government does not appear to have any evidence that [Defendant] actually personally prepared his own income tax returns, rather than delegating that task to an employee or seeking the aid of a third party to assist in the preparation of his own filings.

Id. at 10:9-13. In reply, the government contends:

8

> [Defendant] . . . claims those filings are irrelevant because the jurat proves no more than the jurat on the charged returns that he prepared and there is no evidence that Lara personally prepared his own returns. Def.'s Opp. at 9-11. Because the jurats state different obligations for the taxpayer and the preparer, Lara's agreement to a jurat for his personal returns provides additional evidence of his knowledge of the legal obligation to tell the truth compared to the jurats on the returns that he prepared. As the taxpayer, Lara would have been legally required either to sign the jurat on a paper tax form or to sign the jurat on a Form 8879 authorizing a tax preparer to e-file on his behalf. Next, Lara complains that the government wishes to put before the jury unnecessary information about his personal finances. Def.'s Opp. at 10. In fact, the government wishes to admit the fact of Lara's tax filings only for the jurat that they required, so the government has no objection to excluding the number related to Lara's personal finances during the government's case-in-chief.

Reply at 5:4-14. Defendant's personal income tax returns are admissible with the limitation the government has proposed.

For the reasons stated above, the government's motions in limine, ECF Nos. 59 & 60, are granted.

Dated: March 8, 2018

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

9