McGREGOR W. SCOTT
United States Attorney
MATTHEW G. MORRIS
MIRIAM R. HINMAN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EMILIO LARA, <br><br> Defendants. | CASE NO. 2:15-CR-00039 GEB <br><br> GOVERNMENT'S TRIAL BRIEF <br><br> DATE: March 20, 2018 <br> TIME: 9:00 a.m. <br> COURT: Hon. Garland E. Burrell, Jr. |

## I.     INTRODUCTION

The government respectfully submits this Trial Brief for the assistance of the Court. It sets forth a summary of the facts that are anticipated to be presented at trial, a discussion of the law related to the charged offenses, and an overview of anticipated issues at trial.

## II.     CASE STATUS

The indictment charges the defendant with 38 counts of violating 26 U.S.C. § 7206(2), which makes it a felony to aid or assist in the preparation or presentation of false or fraudulent income tax returns. ECF 1. The defendant has been released on two unsecured bonds, the first for $50,000 co-signed by a surety and the second for $100,000 co-signed by his brother. ECF 5, 6, 17.

On June 16, 2017, the defendant appeared and set a trial date for March 20, 2018. ECF 54. On February 2, 2018, the defendant appeared at a trial confirmation hearing. ECF 55.

///

### III. STATEMENT OF FACTS AND ANTICIPATED EVIDENCE

#### A. Facts

The defendant was a tax preparer. At the time of an interview by the IRS in 2011, he had been preparing tax returns for 15 years, during ten of which he had been in the business of preparing taxes. He scored a perfect score on the H&R Block tax preparer's course, but turned down a job with that company to start his own business. In 2010, the IRS began investigating Lara's business, and it conducted a search of the business on March 30, 2011.

In the course of the investigation, the IRS interviewed 24 of Lara's clients and asked them about deductions that appeared on their recent tax returns. In 21 of the 24 cases, the taxpayers told the IRS investigators that the returns prepared by Lara contained grossly inflated itemized deductions. In his 2011 interview, Lara told IRS agents that he is the only person in the office who enters information about deductions onto his clients' tax forms.

Itemized deductions are a way that taxpayers can reduce their tax obligation to the IRS to account for certain personal expenditures. Those deductions are reported on Schedule A of a taxpayer's Form 1040 individual Income Tax Return. There are seven categories of expenses that a taxpayer might report on a Schedule A. Three of those categories are at issue in this case: "Medical and Dental Expenses," "Gifts to Charity," and "Job Expenses and Certain Miscellaneous Deductions."

Medical and Dental Expenses are reported on line 1 of Schedule A. However, a taxpayer may only deduct medical expenses that exceed 7.5% of the taxpayer's adjusted gross income ("AGI.") Line 2 and 3 of Schedule A help the taxpayer to calculate that 7.5% floor. Line 4 of Schedule A contains the amount that the taxpayer's medical expenses exceed the 7.5% AGI floor.

Gifts to Charity are reported on lines 16 and 17 of Schedule A. Gifts by cash or check are on line 16, and gifts by other than cash or check are on line 17. There is no "floor" for gifts to charity as there is for medical expenses, but gifts by "other than cash or check" that exceed $500 in a tax year require that the taxpayer submit additional forms. The total gifts (along with any "carryover" from a prior year) are added and the sum is placed on Line 19 of Schedule A.

"Unreimbursed employee expenses" are reported on Line 21 of Schedule A. Those deductions, along with the other subsets of "Job Expenses and Certain Miscellaneous Deductions," are totaled on

Line 24.  Similar to Medical Expenses, those miscellaneous deductions are limited to the amounts that exceed a floor: in this case, 2% of the taxpayer's AGI.  Lines 25 and 26 assist the taxpayer with that math, and the extent to which the miscellaneous deductions exceed 2% of AGI is reported on Line 27.

Each of the 38 counts in the indictment relates to a single Form 1040 for one of Lara's clients.  In each case, the indictment sets out the category of alleged inflated itemized deductions on that particular return: medical and dental expenses, charitable contributions, and unreimbursed employee expenses.  As set out in the government's Motion in Limine (ECF 60), some of the returns also contain fraudulently inflated "gifts to charity other than by cash or check" on Line 17.  Those "other than cash or check" deductions are not charged on the indictment.  The Court has ruled that the government can elicit evidence about those fraudulent "other than cash or check" deductions as part of the "same criminal episode."  ECF 67 at 4-5.  Not every count of the indictment includes allegations of inflated deductions from each of the three categories, but each charged count contains at least one inflated category of itemized deduction.

The IRS conducted an undercover investigation of Lara's business on March 1, 2011.  An undercover agent went into Lara's business without an appointment and sat at Lara's desk while Lara prepared his tax return.  The undercover agent brought only a W2 and a mortgage interest statement.  When asked about medical expenses, the agent said that he did not have any such expenses the prior year.  However, the tax return prepared by Lara contained a false deduction of $1,214 for medical expenses on Line 1 of Schedule A.  Lara asked the undercover if he goes to church, but did not ask about any charitable contributions, and the undercover did not volunteer any such information.  The tax return prepared by Lara, however, fraudulently claimed $3,879 in charitable contributions by cash or check, and exactly $500 in contributions by "other than cash or check," for a total of $4,439 on Line 19.  The undercover told Lara that he did not have any business expenses, but Lara prepared a tax return that fraudulently claimed $5,414 in unreimbursed employee expenses.

**B.     The government expects the evidence at trial to consist of the following:**

1.     Tax Returns Filed with the IRS

The government will admit each of the fraudulent tax returns that underlie the charged counts.  An IRS witness will authenticate the returns after describing the types of record keeping systems that the

IRS uses to process and store those types of records. To the extent that those records contain hearsay, those records are subject to the "public record" exception to the hearsay rule. Fed. R. Evid. 803(8). Of course, as set out above, in many cases the government seeks to admit the returns not for the truth of the matters contained in them, but for the falsity of those entries, making the records non-hearsay for most purposes.

### 2. Tax Return Prepared for the Undercover Agent

The government will admit the fraudulent tax return prepared for the undercover IRS agent on March 1, 2011. The Court has ruled *in limine* that this is properly admissible under Rule 404(b). ECF 67. The return will be authenticated by the undercover agent. As with the taxpayers' returns, the form is not admitted for the truth, but rather the falsity, of the information contained in it.

### 3. Video and Audio of the Undercover Investigation, and English Transcript

The government will admit an audio and video recording of the undercover investigation of March 1, 2011. Most of the dialog in that video was conducted in Spanish. The government has previously provided an English translation of that Spanish audio in discovery, and has now received a copy of a translation by a court-certified English interpreter. The government will give a copy of the court-certified interpreter's translation to the jury during the video, and will re-collect that material after the video is complete. The government anticipates introducing the video and audio during the testimony of the undercover agent and expects to play clips of the video, rather than the entirety of the video, pausing periodically as necessary to permit the undercover agent to describe the contents.

### 4. Testimony of Lara's Clients

The government will elicit testimony from one or more of the people named on the fraudulent tax returns. They are expected to testify that they used Lara as their tax preparer, that one or more lines on the tax returns (particularly Schedule A, but also Form 2106 and Form 1040) contains false information, and to provide details about how Lara prepared their returns.

### 5. Testimony of an IRS Revenue Agent

The government will elicit testimony from an IRS revenue agent, who will describe Form 1040 and various supporting schedules and forms, including Schedule A. The agent will describe systems of records maintained by the IRS, and will authenticate the clients' tax returns (or will describe various

features of the exhibits that make them self-authenticating – see below at Section V.A.)

      6.      Testimony of an IRS Criminal Investigation Agent

The government will elicit testimony from a former IRS Criminal Investigation agent who interviewed the defendant on March 30, 2011. He will describe certain incriminating admissions made by the defendant that day.

      7.      Other records maintained by the IRS

The government anticipates admitting records showing that Lara has previously filed his own returns, along with testimony about the assurances that are made on such forms that the information contained in them are true. The Court previously ruled *in limine* that this type of information is admissible under Rule 404(b). ECF 67.

## IV.    POINTS OF LAW

### A.    Elements of a § 7206(2) Offense

"Under § 7206(2), the government must prove that '(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful.'" *United States v. Smith*, 424 F.3d 992, 1009 (9th Cir. 2005) (quoting *United States v. Salerno*, 902 F.3d 1429, 1432 (9th Cir. 1990)).

"[A] false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Neder v. United States*, 527 U.S. 1, 16 (1999) (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)). The Ninth Circuit pattern instruction for § 7206(2) requires that "the income tax return was [false] [fraudulent] as to any material matter necessary to a determination of whether income tax was owed." Ninth Cir. Model Crim. Jury Inst. 9.40; *see United States v. Scholl*, 166 F.3d 964, 980 (9th Cir. 1999) (citing *United States v. Uchimura*, 125 F.3d 1282, 1285 (9th Cir. 1997)). To prove a violation of § 7206(2), the government does not need to show that there was any tax deficiency. "Whether there was an actual tax deficiency is irrelevant because the statute is a perjury statute." *Scholl*, 166 F.3d at 980.

Willfulness in federal criminal tax statutes means "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). In criminal cases involving a knowledge requirement, district judges may give a deliberate ignorance instruction if "the jury could rationally find

GOVERNMENT'S TRIAL BRIEF     5

willful blindness even though it has rejected the government's evidence of actual knowledge." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007). The government is not aware of any case in which the Ninth Circuit has had occasion to consider the applicability of a deliberate ignorance instruction to the *Cheek* willfulness standard for criminal tax cases, but other circuits have found such instructions appropriate. *See United States v. Fingado*, 934 F.2d 1163, 1166-67 (10th Cir. 1991); *United States v. MacKenzie*, 777 F.2d 811, 818-19 (2d Cir. 1985). If the defense in this case claims that Mr. Lara did not know of his legal duty, and if the *Heredia* standard is met, the government may submit a supplemental proposed jury instruction on deliberate ignorance.

### B.   Only One Material False Statement on a Return is Necessary, and the Jury Need Not Be Unanimous About Which One

In many counts of the Indictment, the government has charged multiple false deductions on the same tax return, but the jury can reach a guilty verdict on a count as long as there is sufficient evidence as to one of the alleged false deductions. When an indictment charges several acts in the conjunctive, evidence with respect to any one of the acts is sufficient to support a guilty verdict. *Griffin v. United States*, 502 U.S. 46, 56-57 (1991); *Turner v. United States*, 396 U.S. 398, 420-21 (1970). Thus, when one count alleges several different false statements, there need only be sufficient evidence as to one of the alleged false statements. *See United States v. Bussell*, 414 F.3d 1048, 1058 (9th Cir. 2005).

Furthermore, there is no requirement that jurors be unanimous about which of the alleged deductions in a count is false. While jurors must be unanimous that each element of the offense has been proven, they do not need to be unanimous about "which of several possible sets of underlying brute facts make up a particular element" or "which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999); *see Schad v. Arizona*, 501 U.S. 624 (1991); *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). Applying this principle to a conviction for false statements in a passport application in violation of 18 U.S.C. § 1542, the Ninth Circuit held that "consensus by the jury on a particular false statement is not required." *United States v. McCormick*, 72 F.3d 1404, 1409 (9th Cir. 1995); *see United States v. Schmeltz*, 667 F.3d 685, 687-88 (6th Cir. 2011) (same for falsifying a document in violation of 18 U.S.C. § 1519). Likewise, the Ninth Circuit concluded in an unpublished opinion that jurors in a case under § 7206(2) are not required to

unanimously agree "that a particular deduction was willfully false." *United States v. Newson*, 534 Fed. App'x 604, 604-05 (9th Cir. 2013).

### C. No Need to Prove the Exact Amounts of Inflation Alleged in the Indictment

Although the Indictment specified the amount by which the government believed each deduction was improperly inflated, there is no requirement that the government prove those alleged amounts at trial. In prosecutions under § 7206(1) and (2), the government does not need to prove an exact amount that should have been reported. *United States v. Boulware*, 384 F.3d 794, 811 (9th Cir. 2004); *United States v. Nielsen*, 1 F.3d 855, 860 (9th Cir. 1993); *United States v. Scholl*, 166 F.3d 964, 978 (9th Cir. 1993). As a corollary, when the indictment alleges specific amounts that should have been reported, the government need not prove the exact amounts alleged, as long as the defendant can adequately prepare his defense. *United States v. Thompson*, 23 F.3d 1225, 1229-31 (7th Cir. 1994) (§ 7206(1)); *United States v. Warden*, 545 F.2d 32, 36 (7th Cir. 1976) (§ 7206(1)); *United States v. Cole*, 463 F.2d 163, 167 (2d Cir. 1972) (tax evasion); *United States v. Burdick*, 221 F.2d 932 (3d Cir. 1955) (tax evasion).

### D. No Basis for a Good Faith Instruction

A separate good faith instruction is not necessary. The Supreme Court has reached exactly this issue in a tax case. In *United States v. Pomponio*, the Supreme Court affirmed convictions for willfully filing false income tax returns despite the judge's refusal to give a good faith instruction: "The trial judge in the instant case adequately instructed the jury on willfulness. An additional instruction on good faith was unnecessary." 429 U.S. 10, 13 (1976); *see also United States v. Tarwater*, 308 F.3d 494, 510 (6th Cir. 2002).

This is consistent with Ninth Circuit law. A defendant is not entitled to a separate "good faith" instruction "when the jury has been adequately instructed with regard to the intent required to be found guilty of the crime charged[.]" *United States v. Hickey*, 580 F.3d 922, 931 (9th Cir. 2009). "Our case law is well settled that a criminal defendant has 'no right' to any good faith instruction when the jury has been adequately instructed with regard to the intent required to be found guilty of the crime charged, notwithstanding the normal rules governing 'theory of defense' requests." *United States v. Shipsey, 36*3 F.3d 962, 967 (9th Cir. 2004) (quoting *United States v. Frega*, 179 F.3d 793, 804 (9th Cir. 1999)).

V. **EVIDENTIARY ISSUES**

A. **Certified Tax Returns and IRS Transcripts**

The Government intends to introduce into evidence certified copies of tax returns and IRS transcripts. They are admissible as self-authenticating public documents. Fed. R. Evid. 803(8), 902(1), (4).

B. **Excluded Defense**

The government moved *in limine* to prevent the defendant from admitting any evidence about other tax returns beyond the returns at issue in particular charged counts. ECF 59. The Court has agreed, noting that *United States v. Herzog*, 226 F.2d 561 (9th Cir. 1955), holds that evidence tending to show that the defendant did not commit crimes on some occasions is properly excluded as "immaterial" to his guilt or innocence for conduct on a different occasion. ECF 67 at 2:10-18. Specific acts of good character, to the extent that they exist among the defendant's arc of conduct in life, are "inadmissible under Rules 404(b) and 405(b) to prove his action in conformity therewith." ECF 67 at 2:19-21. Nevertheless, the defendant has since sought a hearing before the magistrate, seeking to re-calendar a Motion to Compel Discovery that dealt almost exclusively with such immaterial and inadmissible tax return information. ECF 71. Judge Barnes denied that motion as moot. ECF 73. However, Lara's counsel represented to Judge Barnes at that hearing that he contemplated asking this Court to revisit, narrow, or otherwise limit its prior order.[1] The government believes that the Court has correctly decided this issue. To the extent that the defendant wishes to revisit the matter, it should be done outside the presence of the jury, in a manner that permits proper development of the record.

C. **The defendant's out of court statements**

When elicited by the United States, the defendant's own statements and representations are admissible as party-opponent admissions. Fed. R. Evid. 801(d)(2)(A). On the other hand, the defendant's prior out-of-court statements, when offered by him, are hearsay and thus inadmissible. Fed. R. Evid. 801(c); 802. It is well established that a defendant cannot try to introduce his own statements through other witnesses but, instead, must testify in court if he wishes to offer such testimony. *See, e.g., United States v.*

---

[1] Indeed, Lara's trial brief appears to consist of nothing more than such a request, as well as revisiting the Court's ruling on the government's other motion in limine.

*Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007) ("These statements [by defendant] were inadmissible hearsay; as [defendant] was attempting to introduce them himself, they were not party-opponent admissions, nor did the fact that they were made in a more broadly self-inculpatory confession bring them within the statement-against-interest exception."); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming trial court's preclusion of defendant eliciting on cross-examination exculpatory statements given to law enforcement officer); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) ("It seems obvious defense counsel wished to place [defendant's denial to police officer] before the jury without subjecting [defendant] to cross-examination, precisely what the hearsay rule forbid.").

The rule against a defendant eliciting his own hearsay statements through examination of other witnesses includes situations in which the witnesses have testified as to other statements made by the defendant during the same conversation that are incriminating. *See Ortega*, 203 F.3d at 682 (rejecting argument that defendant should be permitted to introduce own statements because agent testified as to other incriminating statements made as part of same conversation, and holding rule of completeness does not apply to oral statements). As the Ninth Circuit has explained, a defendant is not permitted "to use the Confrontation Clause as a means of admitting hearsay testimony through the 'back door' without subjecting himself to cross-examination." *Id*. Accordingly, the defense is prohibited from inquiring of any witness, including the United States' witnesses, about the defendant's out of court statements, other than those which may have been elicited by the government on direct examination.

### D. Defense exhibits – reciprocal discovery

To date, the government has provided discovery to the defense and has received no reciprocal discovery from the defendant. Should the defendant seek to introduce any evidence that was subject to reciprocal discovery but was not timely produced to the government, the government reserves the right to move to exclude it, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

### E. Motion for Jencks statements, reciprocal discovery, possible need for recesses

Despite providing early *Jencks* material to the defendant and repeatedly requesting reciprocal discovery, the government has received nothing in the way of early disclosure of witness statements from the defense. Rule 26.2 applies to both parties, not just the government. Fed. R. Crim. P. 26.2(a). While most attorneys in this district provide *Jencks* material before trial, the duty to produce statements

does not technically arise until the witness has testified on direct examination. Fed. R. Crim. P. 26.2(a). Due to the dearth of early *Jencks* material, it is expected that the government will need to formally move for production of statements and await production of those statements. At that point, the Rule permits a recess for the party who has received the materials to "examine the statement and prepare for its use." Fed. R. Crim. P. 26.2(d). The government will make every effort to minimize inconvenience to the Court and the jury. Alternatively, if the defense eventually produces *Jencks* material before trial as is common practice among many attorneys in this district, the government will update the Court on this matter.

### F. **Duplicates**

In addition to testimony, the United States will also introduce various exhibits. Some of these exhibits contain original documents, however most are copies. A duplicate is admissible to the same extent as an original unless: 1) a genuine question is raised as to the authenticity of the original, or 2) under the circumstances, it would be unfair to admit the duplicate instead of the original. *See* Fed. R. Evid. 1003; *United States v. Smith*, 893 F.2d 1573, 1579 (9th Cir. 1990). No such issues regarding duplicates exist in this case.

### G. **Narrowing of Counts for the Jury**

In the interest of judicial economy as well as minimizing inconvenience to jurors and witnesses, the government will evaluate, up until the trial, whether to focus on a subset of the 38 charged counts and dismiss others. The government mentioned this possibility to defense counsel, and defense counsel has indicated an intent to call taxpayer witnesses related to counts regardless of whether the government has dismissed those counts. As with the tax returns excluded by the Court in response to the government's motion *in limine*, testimony or evidence about conduct that is not before the jury is irrelevant, immaterial, and barred by Rule 404(b).

## VI. **WITNESS EXCLUSION**

The Government will move for the exclusion of all witnesses until their testimony has been completed, pursuant to Fed. R. Evid. 615. The government will further move that Special Agent Erwin

///

///

1  Rogers be exempt from the exclusion order as the government's designated representative. *United
2  States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1985); Fed. R. Evid. 615.

Dated: March 13, 2018							McGREGOR W. SCOTT
									United States Attorney

									By: /s/ MATTHEW G. MORRIS
									    MATTHEW G. MORRIS
									    MIRIAM R. HINMAN

									Assistant United States Attorneys