UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:15-cr-39-GEB |
|---|---|
| Plaintiff, | |
| v. | **DECISION AFTER RECONSIDERATION OF ECF NO. 67** |
| EMILIO LARA, | |
| Defendant. | |

Defendant Emilio Lara ("Defendant") filed a document titled "Mr. Lara's Trial Brief," ECF No. 74, but the document is tantamount to a motion for reconsideration of this court's prior order, ECF No. 67, on the government in limine motions. The trial confirmation order prescribes that "[a]ny reasonably anticipated dispute concerning the admissibility of evidence that is not briefed in an in limine motion shall be included in trial briefs," and contains a briefing schedule for in limine motions. ECF No. 56 at 1:19-26 (emphasis added). Defendant states in his trial brief that he "urges the Court to reconsider its previous evidentiary rulings." Trial Brief ("Mot. Reconsideration") at 1:22-23.

After considering the fuller proffer contained in Defendant's trial brief, the portion of the March 9, 2018, ruling concerning Defendant's ability to introduce evidence of non-

fraudulent returns, ECF No. 67 at 2:10-4:3, is clarified. Defendant's motion for reconsideration in his trial brief is therefore granted on this issue, but the ruling is affirmed with the additional reasoning contained herein. Defendant has not shown that any other aspect of the decision should be reconsidered.

Defendant argues:

> In response to the government's motions in limine, the Court issued a written ruling on these issues effectively acquiescing to all of the government's requests. Doc. no. 67. [Defendant] had no opportunity to respond to the government's reply brief (see doc. no. 66), and the Court did not permit a hearing on the issues nor oral argument from the parties. Herein, [Defendant] attempts to frame these disputes as clearly as possible, and urges the Court to reconsider its previous evidentiary rulings in light of his legal arguments, further factual developments, and the course of trial as it progresses.

Mot. Reconsideration at 1:17-25.

> [Defendant]'s defense theory is, and always has been, a simple one: he did not fabricate inflated expenses or deductions on his clients' returns. Any evidence showing inaccurate numbers on returns prepared by [Defendant] can either be explained as an innocent mistake, an instance of the taxpayer lying in order to protect themselves from the repercussions of their misrepresentations to their tax preparer, or otherwise an error made by someone other than [Defendant]. That defense is easily bolstered by even the most cursory analysis of the factual circumstances in the case.
>
> The government alleges that, over the course of four tax seasons between 2009 and 2012, [Defendant] selected 21 customers and 38 returns on which he would input exaggerated numbers for medical expenses, unreimbursed employee expenses, and charitable contributions. This the government claims he did despite having been in business for years

>   beforehand, continuing to be in business for years afterward, and the government having no evidence (and indeed never alleging) that he did so for any other clients or any other returns (including his own).
>
>   The reality, however, is that [Defendant]'s business handled thousands of tax returns every year, and that a database query conducted by the government for [Defendant]'s Practitioner TIN (PTIN) is linked to 2,066 returns in 2009, 2,971 returns in 2010, 2,733 returns in 2011, and 2,106 returns for 2012. See Exhibit A. The 38 returns identified by the government as containing inaccurate expenses amount to less than half of one percent of the returns [Defendant] filed in the applicable years(approximately .38%). The reality is also that [Defendant] received no commission or commensurate benefit for providing individual customers slightly higher refunds, as [Defendant] charged a flat fee for federal income tax returns. Thus, the government's allegation is that [Defendant] selected a minuscule and seemingly random percentage of his clients' returns and inputted exaggerated expenses on those returns, and that he did so without receiving any direct benefit.

Id. at 2:9-3:7.

>   [Defendant] has a constitutional right to present his defense, and that right is abridged by the Court's ruling that he is not permitted to present evidence entirely negating any plausible motive he might have had to conduct the alleged offenses. By restricting [Defendant]'s ability to admit uncharged tax returns (as [Defendant] reads this Court's order to do), this Court prevents [Defendant] not from admitting "other acts" evidence to show that he acted in propensity therewith on the dates charged in the indictment, but from admitting evidence that directly contradicts the government's entire theory of the case.

Id. at 6:13-20.

"Due process 'is, in essence, the right to a fair opportunity to defend against the [government]'s accusations.'" Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir. 1983) (quoting

Chambers v. Mississippi, 410 U.S. 284, 294 (1973)). "The defendant's right to present evidence, however, is not absolute." Id. "In the exercise of this right, the accused . . . must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Id. (quoting Chambers, 410 U.S. at 302).

Defendant offers out-of-Circuit decisions as asserted authority supporting his position, and argues that Herzog v. United States, 226 F.2d 561, 565 (9th Cir. 1955), "does not extend as broadly as the government or this Court claims." Mot. Reconsideration at 5:17–18. Defendant cites five cases in support of the proposition that "multiple Circuits have recognized the wide latitude a defendant is afforded in introducing evidence showing a lack of criminal intent." Id. at 5:18-19 (citing United States v. Brown, 411 F.2d 1134, 1137 (10th Cir. 1969); Black v. United States, 309 F.2d 331, 337 (8th Cir. 1962); Haigler v. United States, 172 F.2d 986, 987 (10th Cir. 1949); Bullard v. United States, 395 F.2d 658, 660 (5th Cir. 1968); Ehrlich v. United States, 238 F.2d 481,484 (5th Cir. 1956)).

The Tenth Circuit states in United States v. Brown that "the accused as part of his defense is entitled to wide latitude in the introduction of evidence which tends to show lack of specific intent." 411 F.2d 1134, 1137 (10th Cir. 1969). But Brown considered whether hearsay testimony was admissible. The defendant argued in Brown:

> that he was at all times simply following the orders and directions of his superiors, . . . in making trade outs in carrying on the

4

> entertainment of Wichita Eagle customers and prospective customers as a part of its business promotion and that at no time did he ever have reason to believe or consider, under the circumstances, that the goods, merchandise and service received by him was taxable income to him.

411 F.2d at 1137. Brown did not concern the relevance of other, unrelated acts at issue and is not applicable to the issue sub judice.

Similarly, the Eighth Circuit, in Black v. United States, 309 F.2d 331 (8th Cir. 1962), sets forth only a broad statement of law inapplicable to the circumstances of the case sub judice. Black discussed the sufficiency of evidence supporting a conviction and the propriety of a jury instruction. Black discusses the defendant's theory of the case — that during the time he "relied exclusively upon [another person] to keep his books and records," id. at 338 — and it contains a statement of law that "evidence on the question of intent, where that is material, may take a wider range than is allowed in support of other issues, otherwise there would often be no means to disclose the purpose of the act charged in which the very gist of the offense may consist," id. at 337. Black does not support Defendant's position.

In Haigler v. United States, 172 F.2d 986 (10th Cir. 1949), the Tenth Circuit held that

> where . . . motive or bad purpose is an essential element of the offense charged, the accused may not only directly testify that he had no such motive or purpose, but he may, within rational rights, buttress such statement with testimony of relevant circumstances, including conversations had with third persons or statements made by them, tending to support his statement.

Id. at 987 (internal quotation marks and citations omitted). But consideration of what Haigler states evinces that it involved introduction of evidence directly relevant to the charged transaction:

> From cross-examination of government witnesses, and from questions asked of defense witnesses, it is plain that the theory of the appellant's defense was that he understood, and that it was generally understood among sheepmen, that if an old herd of sheep was sold and replaced in the same year with a new herd, the taxable income was the difference between the sale price of the old herd, and the purchase price of the new; that he called to the attention of his auditor the balance of approximately $5,000 in the account about thirty days after his income tax return had been filed, and that he understood or was led to believe, that it would be reflected in an amended return. Counsel for the appellant insisted that this testimony was admissible for the purpose of showing his lack of intent to defeat or evade his income tax liability.

Id. at 988. The district court had excluded such testimony, but the Tenth Circuit held that it should have been admitted. Haigler does not support defendant's position.

Ehrlich v. United States, 238 F.2d 481 (5th Cir. 1956) and Bullard v. United States, 395 F.2d 658 (5th Cir. 1968), which simply cites Ehrlich, do contain dicta which could be construed to be at odds with Herzog. In Ehlrich, the Fifth Circuit, when discussing the propriety of the government's other acts evidence, states: "Defendant himself, recognizing the relevancy and value of [other acts testimony], offered similar testimony for the purpose of substantiating his contentions that his acts and conduct were not covinous and fraudulent but open and sincere." Ehrlich v. United States, 238 F.2d 481, 484 (5th Cir. 1956).

6

The Bullard panel states in dictum that "where an accused's conduct for which he is on trial is ambiguous in nature, that is where wrongful if done with an improper intent but not criminal if done innocently, testimony of prior conduct by the accused may be shown to assist the jury is (sic) resolving the issue of intent." 395 F.2d at 660 (citing Ehrlich, 238 F.2d 481). This dicta is not persuasive in light of United States v. Dobbs, a later Fifth Circuit case explicitly adhering to the Ninth Circuit's Herzog opinion. See 506 F.2d 445, 447 (5th Cir. 1975) (citing Herzog, 226 F.2d at 565).

Defendant argues that an exception to the general rule of exclusion exists in another out-of-Circuit case, United States v. Sternstein, 596 F.2d 528, 530 (2d Cir. 1979). Sternstein was discussed in the ruling being reconsidered, ECF No. 67. Defendant insists that Sternstein supports his position notwithstanding Herzog and other cases the government cited in support of its motion in limine. Defendant has not shown that the reasoning of Sternstein applies to the indicted charges in the instant case. Rather, the reasoning of Herzog applies:

> The government produced evidence that 18 new 'house' or 'executive' cars were transferred into appellant's personal ownership and subsequently when resold the income was not recorded on the books of the agency nor reflected in appellant's tax returns. The appellant then offered evidence to show that there were 13 other 'house' or 'executive' automobiles registered in his name and when resold the sales were recorded on the books. This evidence was properly excluded as immaterial A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions.

226 F.2d at 565. The Fifth Circuit has held the same in Dobbs,

7

stating:

> The trial court's exclusion of defendants' proffer of evidence exhibiting routine, noncriminal conduct as to some tax returns was correct. They were not charged with a scheme but with separate instances of criminal conduct and evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.

506 F.2d at 447 (citing Herzog, 226 F.2d at 565). Further, the Sixth Circuit, in an unpublished case, also upheld the exclusion of non-fraudulent tax returns:

> Daulton argues that because the government was permitted to present evidence of acts outside the indictment to show a common scheme, he should be able to negate such evidence with evidence of noncriminal acts. In Dobbs, this court found noncriminal conduct irrelevant because the defendants were charged with separate instances of criminal conduct and not a scheme. 506 F.2d at 447. Similarly, Daulton was charged with separate instances of preparing fraudulent tax returns. The government did not contend that the defendant always engaged in criminal activity when preparing tax returns, but rather that the defendant had a method for maximizing refunds by including deductions for expenses that were not incurred. Therefore, the proffered evidence of instances when Daulton prepared truthful returns is irrelevant to the charged instances.
>
> Daulton argues that the government tried his case like a conspiracy by using evidence not charged in the indictment and by including charges for returns that were not prepared by him personally but instead by his employees. Although this argument may make the overall decision regarding whether the defendant should have been permitted to present the proffered evidence a close question, any error in excluding such evidence was harmless.

United States v. Daulton, 266 F. App'x 381, 386 (6th Cir. 2008).

In the instant case, "[t]he government has charged

8

1 | [Defendant] with filing thirty-eight false tax returns, not with
2 | a fraudulent scheme, and therefore uncharged, non-fraudulent tax
3 | returns are not relevant to the charges." Mot. In Limine Exclude
4 | Evidence Non-Fraudulent Returns at 3:10-11, ECF No. 59. "[T]he
5 | government is not arguing that [Defendant] had a scheme to
6 | attract clients by inflating deductions. Contrary to the
7 | defendant's claim, the government is not required to prove any
8 | motive in section 7206 cases but is merely required to prove
9 | intentional violation of a known legal duty." Reply Support Mot.
10 | In Limine at 2:19-23, ECF No. 66 (citing United States v.
11 | Pomponio, 429 U.S. 10, 12 (1976), clarifying United States v.
12 | Bishop, 412 U.S. 346 (1973); United States v. Easterday, 564 F.3d
13 | 1004, 1008-09 (9th Cir. 2009)).

For the stated reasons, Defendant's motion for reconsideration in his trial brief is granted but, after reconsideration, the decision on the in limine ruling, ECF No. 67, is affirmed with the additional reasoning contained herein.

Dated: March 20, 2018

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

9