1  McGREGOR W. SCOTT
   United States Attorney
2  MATTHEW G. MORRIS
   MIRIAM R. HINMAN
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile:  (916) 554-2900

6
   Attorneys for Plaintiff
7  United States of America

8
                    IN THE UNITED STATES DISTRICT COURT
9
                      EASTERN DISTRICT OF CALIFORNIA
10

11  UNITED STATES OF AMERICA,              CASE NO.  2:15-CR-39-GEB

12                          Plaintiff,     GOVERNMENT'S OPPOSITION TO
                                           DEFENDANT'S SECOND MOTION FOR
13                 v.                      MISTRIAL

14  EMILIO LARA,                           DATE: April 6, 2018
                                           TIME: 9:00 a.m.
15                          Defendant.     COURT: Hon. Garland E. Burrell, Jr.

16

17       The United States opposes the defendant's motion for a mistrial.  The government's statements

18  about motive during the rebuttal argument were permissible.  The Court's statement about its discretion

19  over replays of the undercover video was correct.  No curative instructions are necessary or appropriate.

20                  I.       **LEGAL STANDARD**

21       The Supreme Court has directed that the power to declare a mistrial "ought to be used with the

22  greatest caution, under urgent circumstances, and for very plain and obvious causes."  *United States v.*

23  *Perez*, 22 U.S. (Wheat. 9) 579, 580, 6 L. Ed. 165 (1824).  "Before ordering a mistrial, the court must

24  give each defendant and the government an opportunity to comment on the propriety of the order, to

25  state whether that party consents or objects, and to suggest alternatives."  Fed. R. Crim. P. 26.3.  "A trial

26  judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or

27  if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious

28  procedural error in the trial."  *Illinois v. Somerville*, 410 U.S. 458, 464 (1973).

## II.       THE GOVERNMENT'S STATEMENTS ABOUT MOTIVE DURING THE REBUTTAL ARGUMENT WERE PERMISSIBLE

The government's rebuttal arguments must be understood in the context of the trial, in which the government did not attempt to introduce evidence of motive.  During closing arguments, defense counsel told the jury that if there was a reasonable doubt about why Lara would have done what the government charges, then the jury had a duty to acquit.  To respond to that misstatement of the law, government counsel stated during rebuttal argument that the judge's instructions would not include any requirement that the government prove motive.  Government counsel was correct that the government is not required to prove any motive in order to prove the charges against the defendant.  *See United States v. Pomponio*, 429 U.S. 10, 12 (1976); *United States v. Easterday*, 564 F.3d 1004, 1008-09 (9th Cir. 2009).  Thus, if the jury finds that the government has proved all of the elements of the crime beyond a reasonable doubt, but it does not know what the defendant's motive was, the lack of a conclusion about motive would not be a basis for acquittal.

The government also argued in rebuttal that any attempt to discern the defendant's motive would be speculative.  That was accurate, given that the government did not seek to introduce evidence of motive.  The government further explained that such speculation about motive was unnecessary because motive is not an element that the government is required to prove.  Because the government was not seeking to use proof of motive to support its case, the government stated that identifying the defendant's specific motive was beside the point.  *See* Tr. Rebuttal Argument, Apr. 5, 2018, at 3 ("[T]hat's not at issue in this case.").  Instead, the government proceeded to discuss the evidence that *was* introduced at trial.  By making these comments about speculation, the government was not seeking to preclude the jury from considering the absence of motive.  Rather, government counsel was explaining that the jury should avoid speculating about what the specific motive was, since the government had introduced no evidence about it and identifying the motive is unnecessary to the jury's ultimate finding.  Defense counsel is asking the Court to construe the government's statements in the worst possible light, but "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 646–47 (1974).

Defendant's argument ignores the state of the evidence in this case and instead relies on a case that involved quite different evidence.  The case cited by the defendant, *United States v. Hammond*, 642 F.2d 248 (8th Cir. 1981), is inapposite because the defense in that case was that the defendant's good motive disproved the specific intent required for the crime.  In *Hammond*, the defendant was charged with possession of a controlled substance with intent to distribute.  *Id.* at 249.  The defendant admitted that he had participated in the scheme to purchase cocaine but claimed that he had done so with the purpose of breaking up a drug ring.  Thus, concrete evidence of the *Hammond* defendant's motive could potentially show that he had no criminal intent.  There is no parallel in this case.  If the jury finds that Emilio Lara prepared tax returns with numbers that he knew were false, in violation of a known obligation to tell the truth, what Lara's motive was for doing so will have no bearing on whether the willfulness element of the crime (including intent) is satisfied.  It was permissible for government counsel to clarify that point after defense counsel's misstatement of the law.[1]

## III.   THE COURT'S STATEMENT ABOUT ITS DISCRETION OVER REPLAYS OF THE UNDERCOVER VIDEO WAS CORRECT

During closing argument, defense counsel told the jury that it would be able to watch the undercover video in the jury room.  The Court then clarified to the jury that in order to watch the undercover video, the jury would need to send a note for the Court to consider because the Court has discretion over replays.  The Court correctly stated Ninth Circuit law.

Sending the undercover video back to the jury room for private viewing would have been an error.  The Ninth Circuit has held that it is structural error to send recordings back to the jury room if they were not played in their entirety during the trial.  *United States v. Noushfar*, 78 F.3d 1442, 1444-46 (9th Cir. 1996).  In this case, the jury heard only clips of the undercover video during the trial, and therefore it would be structural error to send the undercover video to the jury room.

---

[1] Even if government counsel had made a misstatement, it would be harmless because after defense counsel objected, the Court reminded the jury that the Court would be responsible for instructing the jury on the law.  After closing arguments, the Court correctly instructed the jury on the law, including the elements that the government is required to prove and the evidence that the jury may consider.  No additional instruction is necessary.  Furthermore, it would be inappropriate for the Court to give the recommended defense instruction at this time, because it would have the Court affirmatively suggest that the jury should consider motive in evaluating the defendant's guilt.  Such a directive from the Court would impinge on the jury's role.

Even if the entire undercover video had been played during the trial, there would be no requirement that the Court send it back to the jury room.  Whether to send back to the jury room a video that has been admitted into evidence and played in its entirety during trial is a matter for the Court's discretion.  *United States v. Chadwell*, 798 F.3d 910, 914-16 (9th Cir. 2015).  If this were a case of discretion, the government would still oppose sending the video to the jury room.  First, it is more prudent to use the Ninth Circuit's recommended procedure of "replaying the tape in open court with a court reporter, the judge, counsel, and the defendant present."  *United States v. Felix-Rodriguez*, 22 F.3d 964, 967 (9th Cir. 1994).  Second, the fact that the undercover video is in Spanish weighs against sending it back to the jury room.  The Ninth Circuit has expressed concerns about replaying of recordings leading to undue emphasis of that evidence.  *See id.* at 966.  That concern is heightened here, where the primary evidence is the English translation rather than the Spanish-language recording.  Indeed, the Ninth Circuit has concluded that a court committed no error in sending English transcripts back to the jury room while instructing that the jury could listen to the Spanish tapes upon request.  *See United States v. Franco*, 136 F.3d 622, 628 (9th Cir. 1998).

The district court's statement that it had discretion over replays of the undercover video, so the jury would need to send a note for the Court's consideration, was correct.  A court has wide discretion about whether or not to replay recordings.  *Felix-Rodriguez*, 22 F.3d at 966.  The court exercises that discretion to avoid the undue emphasis that may occur if a jury focuses on particular segments of recordings.  *Id.*  If the jury asks to see some or all of the undercover video, the Court should seek input from the parties before responding to the request.  No further instruction to the jury on this point is necessary, because the Court already told the jury that if it wanted to watch the undercover video, it would need to send a request to the Court.  Indeed, further instruction about how to request the video would be inappropriate, because making suggestions about what evidence the jury ought to be considering would constitute undue interference in the jury's deliberations.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion for a mistrial, including his requests for curative instructions.

1    Dated:  April 6, 2018                              McGREGOR W. SCOTT
                                                        United States Attorney
2

3                                            By:   /s/ MIRIAM R. HINMAN
                                                   MIRIAM R. HINMAN
4                                                  MATTHEW G. MORRIS
                                                   Assistant United States Attorneys
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28